[No. A084410. First Dist., Div. Five. Aug. 27, 1999.]

In re the Marriage of JEAN E. and ROBERT G. CAMPBELL.
JEAN E. CAMPBELL, Appellant, v.
ROBERT G. CAMPBELL, Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A. and II.C.

**COUNSEL**

Lisa A. Goldfien for Appellant.

Peter David Rubin for Respondent.

## OPINION

**STEVENS, J.**—Jean E. Campbell (Jean) appeals that portion of a judgment, in an action for dissolution of marriage, that awarded real property (the Keaton property) to Robert G. Campbell (Robert) as his separate property. In particular, she challenges the trial court's order that precluded the presentation of extrinsic evidence designed to show that Jean had an ownership interest in the Keaton property as the result of an alleged oral transmutation of the Keaton property.

Three primary issues on appeal are presented: (1) whether Jean waived her claim to an ownership interest in the Keaton property; (2) whether the trial court erred in rejecting proffered extrinsic evidence of an alleged oral transmutation under Family Code section 852[1]; and (3) whether her appeal is frivolous. We affirm.

### I. FACTS AND BACKGROUND

Jean and Robert were married on December 6, 1991, and a judgment of dissolution of their marriage was entered on June 4, 1997. During this time, the couple lived in a home on the Keaton property that Robert owned prior to marriage.

Robert is a professional aerial photographer and pilot. During the first years of marriage, he had little or no income due to a downturn in the photography business as well as the economy. In an effort to keep the couple financially afloat, Jean contributed money from her separate property. This included the expenditure of separate property funds on the cleaning and upkeep of the Keaton property.

Before the two married, Jean had obtained a teaching credential and had worked as a licensed real estate agent for less than one year. She also began working for Robert's business, Robert Campbell Photography. Jean was not compensated for this work. She also used separate property to purchase video equipment for the business, making these purchases by check upon which she wrote the notation "loan." These purchases aggregated approximately $34,000.

In 1992, the parties began remodeling the Keaton property. Spending approximately $66,000 of her separate property funds, Jean financed the entire remodeling project. According to Jean, she spent this money on improvements in reliance upon Robert's promise to place her name on the

---

[1]Unless otherwise indicated, all further section references are to the Family Code.

title to the Keaton property. On the other hand, Robert claims he was willing to put Jean's name on the title to the Keaton property, but only if he was also added to the title on his wife's premarital real property located in Sausalito. Neither party was ever added as titleholder to their respective separate properties.

The parties filed a joint statement of agreed and contested issues in the dissolution action. In the statement, Jean claimed an ownership interest in the Keaton property, alleging fraudulent conduct on the part of Robert. Conversely, Robert listed the Keaton property as his separate property, asserting that an oral transmutation of the Keaton property never took place.

At the commencement of trial, Robert filed a motion *in limine* asserting that the trial court lacked jurisdiction to hear Jean's claims of separate property loans and of an ownership interest in the Keaton property. The trial court agreed in part, ruling that it lacked jurisdiction in the family law proceeding to resolve whether Jean's use of separate funds enabled her to acquire a community interest in Robert's separate property. The trial court's ruling, however, permitted evidence of Jean's use of such funds for improvements to the Keaton property to establish her claim that these expenditures were loans to Robert.

The trial judge rendered a statement of decision in which he awarded the Keaton property to Robert, ruling that his "[W]ife has no interest either through her claims of oral transmutation or through claims that her separate property monies expended on the Keaton Avenue property have resulted in a community interest in said property." The statement of decision further noted that Jean could not claim interest in Robert's separate property "through a non-Family Law Act theory of relief" in this family law proceeding. Robert was ordered to reimburse Jean for loans from her separate property in the amount of $37,779.83, plus interest.

In addition to this appeal, Jean has also filed an action entitled Campbell v. Campbell (Super. Ct. Sonoma County, 1998, No. 219486), of which we have previously taken judicial notice.[2]

II. DISCUSSION

 A. *Waiver**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

[2]In the Sonoma action Jean brought a complaint for breach of contract, declaratory relief, quiet title, fraud, and breach of fiduciary duty, and sought damages.
*See footnote, *ante*, page 1058.

B. *Extrinsic Evidence of an Oral Transmutation of Property Under Section 852* .

 Jean asserts that the trial court erred in refusing to consider extrinsic evidence to establish that the Keaton property was orally transmutated to community property. Jean also claims that section 852 reenacts the statute of frauds as applied to interspousal transmutations and that the doctrine of equitable estoppel, as an exception to the statute of frauds, equally applies to section 852. The issue presented is whether extrinsic evidence may be considered, under the doctrine of equitable estoppel, to prove an oral transmutation of property between spouses.

 Both before and during marriage, spouses may agree to change the status of any or all of their property through a property transmutation. (§ 850.) A transmutation is an interspousal transaction or agreement that works a change in the character of the property. (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 293 [39 Cal.Rptr.2d 673] (*Haines*).) In order for a transmutation of property to occur, statutory formalities must be met. For . example, section 852, subdivision (a) provides: "A transmutation of real or personal property is not valid unless made·in *writing* by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (Italics added.) Although . section 852 mandates that a writing is required for a transmutation of real or personal property between spouses, it is silent as to reliance upon extrinsic evidence to prove a transmutation. An answer may be found by applying the rules governing statutory interpretation.

 "As with any statutory construction inquiry, we must look first to the language of the statute. 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' [Citation.] If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. [Citation.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*Diamond Multimedia Systems, Inc.* v. *Superior Court* (1999) 19 Cal.4th 1036, 1046-1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) However, language that appears unambiguous on its face may be shown to have a latent ambiguity and thus a court may turn to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

A review of the legislative history reveals that prior to the enactment of section 852, former Civil Code section 5110.730 permitted the oral transmutation of property between spouses notwithstanding the statute of frauds.

(*Woods* v. *Security-First Nat. Bank* (1956) 46 Cal.2d 697, 701-702 [299 P.2d 657].) This rule, however, generated extensive litigation in dissolution proceedings. (Recommendation Relating to Marital Property Presumptions and Transmutations (Sept. 1983) 17 Cal. Law Revision Com. Rep. (1984) pp. 209, 214.) It was also found to encourage spouses to transform a passing comment into an agreement, or to commit perjury by manufacturing an oral or implied transmutation. (*Ibid.*) Consequently, former Civil Code section 5110.730 was amended in 1984 to require that the transmutation of real property between spouses be in writing by an express declaration.[3]

The admissibility of extrinsic evidence to establish a transmutation of property was a topic of discussion in *Estate of MacDonald* (1990) 51 Cal.3d 262 [272 Cal.Rptr. 153, 794 P.2d 911] (*MacDonald*). In this opinion, our Supreme Court was asked to decide whether the writing of a spouse constituted an "express declaration" that changed community property into a separate property interest under former Civil Code section 5110.730. Discussion centered upon whether, without resort to extrinsic evidence, the language of the writing contained an express statement that the writer intended to effect a change in the character or ownership of community property. Adopting the reasoning of an earlier opinion that analyzed the creation of a joint tenancy under Civil Code section 683, the court precluded the receipt of extrinsic evidence to prove a transmutation where sufficiency of the "express declaration" requirement of section 852 was at issue. (See *MacDonald, supra,* at p. 267; *California Trust Co.* v. *Bennett* (1949) 33 Cal.2d 694 [204 P.2d 324].)

Although Jean correctly points out that *MacDonald* did not address the question of whether the principle of estoppel could be applied to an oral transmutation, we nevertheless find its reasoning instructive on the issue we consider. Here, the trial court's ruling complies with the plain language of the statute, namely that a transmutation must be in writing. It also "effects the intent of the Legislature to create a writing requirement which enables courts to validate transmutations without resort to extrinsic evidence and thus, without encouraging perjury and the proliferation of litigation." (*MacDonald, supra,* 51 Cal.3d at p. 272.) As our Supreme Court pointed out: "We are aware that [Civil Code] section 5110.730(a), construed as we have construed it today, may preclude the finding of a transmutation in some cases, where some extrinsic evidence of an intent to transmute exists. But, as previously discussed, it is just such reliance on *extrinsic evidence* for proof of transmutations which the Legislature intended to eliminate in enacting the writing requirement of [Civil Code] section 5110.730(a)." (*MacDonald, supra,* at p. 273, italics added.) While *MacDonald* addressed the potential

---

[3]Former Civil Code section 5110.730 became Family Code section 852 in 1992.

use of external evidence to construe a *written* transmutation, its reasoning would apply with even greater force to the creation of an oral transmutation.

Jean however points to a Law Revision Comment to section 852, which reads: "Section 852 makes clear that *the ordinary rules and formalities* applicable to real property transfers apply also to transmutations of real property between spouses." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (1994 ed.) § 852, p. 317, italics added.) From this, she asserts that the long-established exception to the statute of frauds, the doctrine of estoppel, allows use of extrinsic evidence under section 852. We note that a similar argument was advanced by Justice Arabian in his dissenting opinion in *MacDonald, supra,* 51 Cal.3d at page 280. In rejecting this argument, the majority opinion discussed the various "policy considerations weighing both in favor of and against any type of transmutation proof requirement." It was concluded: "[t]he Legislature, in enacting [Civil Code] section 5110.730(a), apparently thought it unwise to rely on some kinds of evidence to effect transmutations. It is not for us to question that legislative conclusion." (*MacDonald, supra,* at p. 273.)

Nor do we find cases cited by Jean relevant to the issue under consideration here. None addresses the question of whether extrinsic evidence may be considered to prove an oral transmutation of property between spouses under section 852. *Byrne* v. *Laura* (1997) 52 Cal.App.4th 1054 [60 Cal.Rptr.2d 908], was not a family law action, but rather a probate proceeding in which decedent's unmarried cohabitant sought to enforce an oral agreement for both support and a joint tenancy interest in property. There, the court applied principles of equitable estoppel to an oral joint tenancy in the absence of "a clear directive from the Legislature." (*Id.* at p. 1070; cf. *In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 658-659 [267 Cal.Rptr. 218] [rejecting use of estoppel to convert separate property into community].)

Jean's reliance upon *Haines, supra,* 33 Cal.App.4th 277, is also misplaced. This case discussed the resolution of a conflict between Evidence Code section 662, the common law presumption in favor of title, and former Civil Code section 5103 (now § 721), the presumption of undue influence that arises when one spouse gains advantage over the other. (*Haines, supra,* 33 Cal.App.4th at pp. 296-297.) The court was asked to resolve which statute applied in order to characterize property as either separate or community as the result of an alleged transmutation evidenced by a quitclaim deed executed by the wife. (*Ibid.*) The court in *Haines* applied the principle that when two statutes governing a related subject matter conflict, the more specific (former Civ. Code, § 5103) controls. (*Haines, supra,* at p. 301.)

Thus, under the facts presented, the burden was placed on the husband to prove that the interspousal property transaction or agreement was not consummated in violation of his fiduciary duties. (*Ibid.*)

Jean asserts that the trial court should have applied similar principles here. She now claims that Robert, in whose name legal title rested, should not have been presumed to own full beneficial title to the Keaton property. (Evid. Code, § 662) Rather, as the spouse advantaged by the improvements, he should have been presumed to exercise undue influence over her pursuant to section 721, subdivision (b). However, before this statutory presumption may be applied, there must first be proper proof of a valid transmutation. (See *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 588-594 [81 Cal.Rptr.2d 726]; see also *In re Marriage of Koester* (1999) 73 Cal.App.4th 1032, 1037, fn. 5 [87 Cal.Rptr.2d 76] [requiring "an unambiguous express written transmutation under section 852 [of the Family Code]. As *Barneson* demonstrates, you don't just slip into a transmutation by accident."].) For example, in *Haines*, the court applied the presumption of undue influence *only after* summarily concluding that a quitclaim deed was sufficient evidence of a transmutation. (*Haines, supra,* 33 Cal.App.4th at pp. 294, 297.) Here, Jean has not established the existence of a valid transmutation and thus there is no basis upon which to apply the presumption of undue influence.

We therefore conclude that section 852 precludes the admission of extrinsic evidence to prove an oral transmutation of property between spouses.

C. *Frivolous Appeal*\*

. . . . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

The judgment is affirmed.

Jones, P. J., and Haning, J., concurred

Appellant's petition for review by the Supreme Court was denied November 17, 1999.

---

\*See footnote, *ante,* page 1058.