[No. S122254. Aug. 11, 2005.]

In re the Marriage of DIANE L. AND DOUGLAS BENSON.
DIANE L. BENSON, Appellant, v.
DOUGLAS BENSON, Respondent.

1098

**Counsel**

Ricks & Associates, Gary R. Ricks and Brigham J. Ricks for Appellant.

Griffith & Thornburgh, John R. Rydell II and John C. Eck for Respondent.

## OPINION

**BAXTER, J.**—Family Code section 852, subdivision (a)[1] (section 852(a)) provides that a "transmutation," or an interspousal transaction changing the character of community or separate property (§ 850), "is not valid unless made in writing by an express declaration" approved by the adversely affected spouse. In *Estate of MacDonald* (1990) 51 Cal.3d 262, 264 [272 Cal.Rptr. 153, 794 P.2d 911] (*MacDonald*), this court held that a writing satisfies the "express declaration" requirement only if it states on its face that a change in the character or ownership of the subject property is being made. *MacDonald* made clear that this construction of section 852(a) precludes the use of "extrinsic evidence" to prove that the writing effected a transmutation. (*MacDonald, supra,* 51 Cal.3d at p. 264.) *MacDonald* explained that the Legislature, in enacting these requirements and abrogating prior case law, sought to increase certainty and honesty in marital property disputes, and to decrease the burden on the courts in resolving such matters.

In this dissolution case, Douglas Benson (Husband) claims he conveyed to Diane L. Benson (Wife) his community property interest in their home after she orally promised to waive, in writing, her community property interest in Husband's retirement accounts. No such writing was ever made. Despite section 852(a) and *MacDonald, supra,* 51 Cal.3d 262, the lower courts ruled that Husband's performance of his part of the bargain, as evidenced by the deed he signed in Wife's favor, served as an adequate substitute for Wife's express written statement changing the retirement accounts into Husband's separate property.

■ We disagree. Section 852(a) does not operate like the general statute of frauds (Civ. Code, § 1624, subd. (a)) (Civil Code section 1624(a)), in which the requirement of a basic writing is subject to an implied exception for "part performance" of the contract's terms. ■ Even assuming Husband's transfer of the deed constituted part performance of Wife's promise to transmute the retirement accounts, section 852(a) requires such agreements to be both written and express, and seeks to prevent transmutations under circumstances like those present here. By insisting upon a special writing expressly changing the character of the disputed property, *MacDonald* all but decided that section 852(a) is not satisfied where no such writing exists at all. Thus, the lower courts erred in accepting Husband's transmutation claim and in denying Wife a community property interest in his retirement plans. We will reverse the judgment.

---

[1] All statutory references are to the Family Code unless otherwise stated.

## Facts

The parties married in 1983. They subsequently had two children, and accumulated property together. Separation occurred in 2000. In 2001, Wife petitioned for dissolution of the marriage. At trial, the parties litigated various issues, including the division of property. The record contains the following evidence.

During the marriage, Husband worked full time as a truck driver for a food wholesale company. Through his employer, he participated in a stock owner-ship plan, and contributed to a 401(k) retirement plan. Wife worked part time as a nurse at a hospital. She also had a retirement plan through her employer.

At the start of the marriage, Wife's father, Dr. Robert L. Maahs, owned the Santa Barbara house in which the couple lived. Husband and Wife contrib-uted some money each month towards use of the house. However, it appears these payments did not cover the mortgage bill or reflect the fair rental value of the property.

Wife is the beneficiary of an irrevocable trust. Her father is the trustee. During the marriage, and apparently for his own estate planning purposes, Wife's father gave the couple a 100 percent ownership interest in the Santa Barbara house. This transfer occurred incrementally over several years. At some point during this process, Wife's father asked the couple to convey the house to the trust. They agreed. Hence, in two transfers occurring in late 1996 and early 1997, the couple signed grant deeds giving the trust a 100 percent ownership interest in the house.

The parties disputed the circumstances surrounding the transfer of the house to Wife's trust. Husband offered two different versions of events in the trial court, neither of which matched Wife's account.

Initially, Husband maintained that he acquired a community property interest in the house, and that he did not surrender this interest by deeding the property to Wife's trust. To enforce this claim, Husband successfully moved before trial to join the trustee, Wife's father, as a party to the dissolution proceeding. However, while trial was under way, Husband settled all claims against the trust for an agreed-upon amount. The court promptly dismissed the trustee from the case with prejudice.

Later, Husband testified that an oral agreement between the parties changed the community character of both the house and his retirement accounts, as follows: In 1996, when the couple signed the first deed in favor of Wife's trust, Husband agreed to forgo any community interest in the house and Wife

agreed to forgo any community interest in his retirement accounts. Wife said she would sign a writing transforming Husband's retirement accounts into his separate property. However, no writing was ever made. Husband knew that such a document could easily have been prepared and signed at the same time he deeded the house to Wife's trust. He did not press the issue because he trusted Wife, and because they had no plans to divorce at the time. Husband admitted at trial that he failed to mention any oral transmutation agreement or to identify the retirement accounts as separate property during discovery and other pretrial proceedings.

Wife denied making any promise to waive or change her community interest in Husband's retirement accounts. She testified that such conversations were limited to the house, and to her father's request that it be conveyed to the trust. Wife reportedly told Husband that they should repay her father's generosity by returning the house to him as trustee.

Consistent with testimony on both sides, the trial court concluded that Husband relinquished his community interest in the house when he deeded it to Wife's trust. However, the court also agreed with Husband that Wife relinquished her community interest in his retirement accounts. The court reasoned that section 852(a)'s writing requirement is subject to implied exceptions that traditionally have been applied in other statutory contexts. Under this approach, Husband's act of deeding the house to the trust constituted "part performance" of the oral transmutation agreement he described, and permitted its enforcement against Wife. In all other respects, the trial court's judgment resolved property, support, and child custody issues not relevant here.

The Court of Appeal affirmed the judgment. The appellate court adopted and applied the reasoning of the trial court.

In seeking review, Wife claimed the lower courts erred in finding a valid transmutation of Husband's retirement accounts under section 852(a), and in denying her a community property interest in those accounts. We now address Wife's concerns.

### Discussion

 The characterization of property as community or separate determines its division upon dissolution of the marriage. Each spouse owns a one-half interest in all community property. (§ 751.) In general, community property is divided equally in the aggregate when the marriage ends. (§ 2550; see §§ 2600–2604.) However, separate property is not subject to a similar division, and belongs only to the owner spouse. (§ 752.)

■ In determining the community or separate nature of property, the statutory scheme starts from the premise that all property acquired during the marriage is community property. (§ 760.) As pertinent here, this general rule, or "presumption" (§ 802), covers both real property (§ 760) and employee retirement plans. (§ 2610; *In re Marriage of Lehman* (1998) 18 Cal.4th 169, 177 [74 Cal.Rptr.2d 825, 955 P.2d 451]; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 841–842 [126 Cal.Rptr. 633, 544 P.2d 561].) By its own terms, the definition of community property in section 760 applies "[e]xcept as otherwise provided by statute." It therefore exempts property defined as separate under other provisions. (E.g., §§ 770 [property acquired by gift or inheritance], 771 [earnings and accumulations while living separate and apart].)

Individuals may alter their property rights under these statutes. (§ 1500.) One set of rules authorizes and regulates contracts made by prospective spouses that take effect upon their marriage. (§§ 1600–1617.) Critical here is the separate scheme governing transactions between spouses that "transmute" or change the character of property during an ongoing marriage. (§§ 850–853.)

■ In particular, section 850 allows contracts or other transfers transmuting the separate property of one spouse to either the separate property of the other spouse or the community property of both spouses. Community property also may become separate property under this section. Consideration may, or may not, be exchanged. (*Ibid.*) However, a companion statute, section 852(a), imposes certain requirements.[2] Section 852(a) states that a transmutation "is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."

Here, there is no dispute that Husband's retirement accounts (much like the house the couple received from Wife's father) were originally community

---

[2] Section 852 reads in full as follows: "(a) A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected. [¶] (b) A transmutation of real property is not effective as to third parties without notice thereof unless recorded. [¶] (c) This section does not apply to a gift between the spouses of clothing, wearing apparel, jewelry, or other tangible articles of a personal nature that is used solely or principally by the spouse to whom the gift is made and that is not substantial in value taking into account the circumstances of the marriage. [¶] (d) Nothing in this section affects the law governing characterization of property in which separate property and community property are commingled or otherwise combined. [¶] (e) This section does not apply to or affect a transmutation of property made before January 1, 1985, and the law that would otherwise be applicable to that transmutation shall continue to apply."

property. The reason is that any right to receive retirement benefits represented deferred compensation for work Husband performed during the marriage. (See *In re Marriage of Lehman, supra*, 18 Cal.4th 169, 177; *In re Marriage of Brown, supra*, 15 Cal.3d 838, 841–842.) However, Husband claims the retirement accounts were transmuted into his separate property under an agreement that, in return, he would deed his community interest in the couple's home to Wife's trust. Husband concedes the transmutation of his retirement accounts was never reduced to writing, as contemplated by section 852(a). But he argues that any requirement of such a writing was obviated by his performance of his side of the bargain.[3]

Wife insists, on the other hand, that Husband's testimony about an unwritten agreement between the spouses could not establish such a transmutation. Section 852(a)'s requirement of an express written transmutation, Wife urges, is absolute, and is not subject to an exception for "part performance."

The language of the statute, both on its face and as judicially construed, supports Wife's view. (See *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 38 [283 Cal.Rptr. 584, 812 P.2d 931] [embracing plain meaning of community property statute].) Section 852(a) states that an agreement to change the character of marital property "is not valid unless" it (1) is "in writing," (2) contains an "express declaration" by which the "transmutation" is made, and (3) is "accepted" in some fashion by the "adversely affected" spouse. This multipronged rule is framed in the negative, as though all intendments weigh against finding compliance in the usual case. In addition, no exception to the requirement of an "express" written declaration appears in the statute. Viewed as a whole, these features suggest the Legislature envisioned a standard from which married couples could not freely depart.

In *MacDonald, supra*, 51 Cal.3d 262, this court identified the kind of writing needed to transmute property by means of an "express declaration" under section 852(a).[4] As Wife suggests, *MacDonald* confirms that lawmakers contemplated no exception to the special writing requirement like the one

---

[3] Husband claims here, as on appeal, that Wife "waived" her right to complain about the alleged oral agreement to treat his retirement accounts as separate property. Husband rests the proposed procedural bar on Wife's failure to exclude this evidence at trial. However, as we will make clear, Wife does not challenge the transaction on technical, procedural, or evidentiary grounds. (See Evid. Code, § 353, subd. (a).) Nor does she raise a statute of frauds defense of the kind deemed forfeited by failure to timely object to evidence of a disputed oral contract. (See Civ. Code, § 1624(a); *Howard v. Adams* (1940) 16 Cal.2d 253, 257 [105 P.2d 971]; see 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 266, p. 262.) Wife has consistently claimed that no valid transmutation occurred under section 852(a) and *MacDonald, supra*, 51 Cal.3d 262, and that these authorities provide a substantive ground for relief. Hence, we see no bar to resolving the issue under review.

[4] *MacDonald, supra*, 51 Cal.3d 262, addressed former Civil Code section 5110.730. (Added by Stats. 1984, ch. 1733, § 3, p. 6302.) After *MacDonald* was decided, and as part of a

urged here. (See *Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1265 [241 Cal.Rptr. 22, 743 P.2d 1279] [declining to create exception that would effectively nullify statutory rule].)

In *MacDonald*, Margery and Robert had been married several years when they learned that Margery was terminally ill. They decided to divide their community assets, such as stocks and real property, into separate estates that could be inherited by the children each spouse had from a previous marriage. A short time later, Robert received a large cash disbursement from the community pension plan he acquired during his marriage to Margery. Consistent with the couple's general estate plan, the pension funds were deposited into IRA accounts opened solely in Robert's name at three different financial institutions. The designated beneficiary of each account was a revocable living trust that Robert had established in his children's favor. Both Robert and Margery signed standard form IRA agreements. In doing so, Margery consented to the designation of Robert's trust as the sole beneficiary of those accounts (the consent paragraphs). (*MacDonald, supra,* 51 Cal.3d 262, 264–265.)

After Margery died, the executor of her estate petitioned the court to establish a community property interest in the IRA accounts. The trial court found that in signing the IRA agreements, Margery intended to transmute her community share of those funds into Robert's separate property. Concluding that a valid transmutation had occurred, the trial court denied the petition. The Court of Appeal reversed on the ground the consent paragraphs did not satisfy section 852(a). This court granted Robert's petition for review. The court affirmed the judgment. (*MacDonald, supra,* 51 Cal.3d 262, 265–266, 273; see *id.* at p. 273 (conc. opn. of Mosk, J.); *id.* at p. 274 (dis. opn. of Arabian, J.).)

*MacDonald* held that notwithstanding evidence that Robert and Margery intended to divide their community property into separate estates, any attempt to change the character of the pension funds failed under section 852(a). The court acknowledged that the consent paragraphs in the IRA agreements satisfied two of the three statutory requirements. Specifically, they were " 'in writing,' " and were " 'accepted' " (i.e., signed) by Margery, the adversely affected spouse. (*MacDonald, supra,* 51 Cal.3d 262, 267–268.) However, the documents lacked " 'an express declaration' " by which transmutations must be made. (*Ibid.*) In defining and applying this phrase, *MacDonald* held that

comprehensive reorganization of the law, the Legislature repealed former Civil Code section 5110.730 (Stats. 1992, ch. 162, § 3, p. 464), and replaced it with Family Code section 852. (Stats. 1992, ch. 162, § 10, p. 492, operative Jan. 1, 1994.) Both versions contain the same language. We will refer solely to section 852, even when discussing its predecessor under *MacDonald.*

the IRA documents needed language *"expressly stating* that [Margery] was effecting *a change in the character or ownership"* of community property. (*Id.*, at p. 273, italics added; see *id.* at pp. 264, 272.) Nothing indicated that she knew "the legal effect of her signature might be to alter the character or ownership of her interest in the pension funds." (*Id.* at pp. 272–273.)

*MacDonald* relied heavily upon the legislative history to construe the critical statutory phrase. (*McDonald, supra,* 51 Cal.3d 262, 268–269, 270 & fn. 6.) The court summarized this history, as follows.

In 1984, the Legislature adopted section 852 as recommended by the California Law Revision Commission (Commission). The Commission reported that under California law at the time, spouses could easily transmute marital property, including real estate, without adhering to any rules or formalities. (Recommendation Relating to Marital Property Presumptions and Transmutations (Jan. 1984) 17 Cal. Law Revision Com. Rep. (1984) pp. 213–214 (Commission Report).) The Commission Report made clear that in such cases, transmutations could be based on oral statements, implications from conduct, or documents not manifesting a clear intent to transmute property. (*Id.* at p. 213, fn. 20, citing Reppy, *Debt Collection from Married Californians: Problems Caused by Transmutations, Single-Spouse Management, and Invalid Marriage* (1981) 18 San Diego L.Rev. 143 [describing objectionable transmutation cases].) According to the Commission, the "easy transmutation" rule generated extensive litigation and unseemly tactics in dissolution cases. (Com. Rep., *supra,* at p. 214.) It encouraged spouses "to transform a passing comment into an 'agreement' or even to commit perjury by manufacturing an oral or implied transmutation." (*Ibid.*)

*MacDonald, supra,* 51 Cal.3d 262, 268, continued: The Commission drafted section 852 to achieve two basic goals. First, the statute's new requirements would increase certainty as to whether a transmutation had in fact occurred. (Com. Rep., *supra,* at pp. 224–225.) Second, section 852 would overrule existing case law insofar as it did not require a transmutation to be both written and express. (Com. Rep., *supra,* at p. 225.)

Against this backdrop, *MacDonald* concluded that section 852 blocks efforts to transmute marital property based on evidence—oral, behavioral, or documentary—that is easily manipulated and unreliable. (*MacDonald, supra,* 51 Cal.3d 262, 269.) Thus, according to *MacDonald,* the Legislature could not have meant to validate *any* writing offered to prove a change in the character of property. (*Ibid.*) Though no particular terminology is required (*id.* at p. 273), the writing must reflect a transmutation on its face, and must eliminate the need to consider other evidence in divining this intent. (*Id.* at

p. 272.) *MacDonald* observed that this construction of the statute achieves the stated aims of reducing litigation and discouraging perjury. (*Ibid.*)[5]

Finally, *MacDonald* acknowledged that section 852 might prevent courts from finding a transmutation in cases where some evidence suggests the spouses meant to change the character of their property, but where they failed to follow the statutory requirements. However, *MacDonald* attributed any incongruous results to the manner in which lawmakers ultimately chose to balance the competing policy concerns. *MacDonald* declined to second-guess the legislative decision to sacrifice informality in transmutations in favor of protecting community property and promoting judicial economy. (*MacDonald, supra*, 51 Cal.3d 262, 273.)

■ The foregoing principles support Wife's view that no valid transmutation of Husband's retirement accounts could occur absent her express written consent transforming them into Husband's separate property. According to *MacDonald, supra*, 51 Cal.3d 262, such a transaction necessitates not only a writing, but a special kind of writing, i.e., one in which the adversely affected spouse expresses a clear understanding that the document changes the character or ownership of specific property. It follows from this special writing requirement that section 852(a) cannot be satisfied where there is no writing about the subject property at all, and where a transmutation would have to be inferred from acts surrounding the contract in dispute.

Subsequent decisions adhere closely to *MacDonald*, and decline to find a valid transmutation absent express written language to that effect. (*Estate of Bibb* (2001) 87 Cal.App.4th 461, 469–470 [104 Cal.Rptr.2d 415] [Department of Motor Vehicles printout changed vehicle registration, not ownership]; *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 589–594 [81 Cal.Rptr.2d 726] [written brokerage instructions changed possession, not ownership, of stock].) Other authorities conclude that under *MacDonald, supra*, 51 Cal.3d 262, section 852(a) is not satisfied solely by one spouse's detrimental reliance upon the other's oral promise to transmute property. (*In re Marriage of Campbell* (1999) 74 Cal.App.4th 1058, 1063–1064 [88 Cal.Rptr.2d 580] (*Campbell*) [wife acquired no interest in husband's home where she spent her money remodeling property after he promised to share title]; Cal. Community Property with Tax Analysis (Matthew Bender, 2004) Transmutation of Property, § 2.24 [2][b], pp. 2-50 to 2-51.) A contrary view would threaten to resurrect the "easy transmutation" rule that the Legislature repudiated when it enacted section 852 20 years ago. (See *Estate of Nelson* (1964) 224

---

[5] In *MacDonald*, the majority rejected the dissent's view that section 852(a) establishes "a simple writing requirement akin to the statute of frauds—a formality that would admit the use of collateral evidence to clarify the writer's meaning." (*MacDonald, supra*, 51 Cal.3d 262, 277 (dis. opn. of Arabian, J.); see discussion, *post.*)

Cal.App.2d 138, 143 [36 Cal.Rptr. 352] [transmutation may be "inferred from all the circumstances," including acts and oral statements]; *Giacomazzi v. Rowe* (1952) 109 Cal.App.2d 498, 503 [240 P.2d 1020] [transmutation may occur where "one party has performed all that he promises to perform and the other accepts all the benefits"].) As a result, the lack of a writing expressly changing the character of Husband's retirement accounts seems fatal to finding a transmutation here.

Husband responds that nothing in the statute's history or *MacDonald* prevents part performance from excusing the special writing that section 852(a) requires. He emphasizes the Law Revision Commission's 1993 Report on the 1994 Family Code, especially the comment to section 852, which states that "the ordinary rules and formalities applicable to real property transfers apply also to transmutations of real property between the spouses." (1994 Fam. Code, 23 Cal. Law Revision Com. Rep. (Nov. 1993) com. on § 852, p. 159, reprinted at 29C West's Ann. Fam. Code (2004 ed.) foll. § 852, p. 458 (Commission Comment).) The Commission Comment also cites the statute of frauds in Civil Code section 1624. (29C West's Ann. Fam. Code, *supra*, at p. 458.) Husband theorizes that this language shows the Legislature wanted section 852(a) to encompass not only the "rules and formalities" imposed by the statute of frauds, but also traditional exceptions to those "rules and formalities," such as the one urged here.

■ Preliminarily, the general statute of frauds in Civil Code section 1624(a) was enacted in 1872, and has been expanded over the years to cover various kinds of contracts, most involving real property and commercial matters. The statute requires either a written contract or "some note or memorandum" subscribed by the party to be charged. (*Ibid.*) Since the statute of frauds primarily serves to prove that a contract exists (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345 [9 Cal.Rptr.3d 97, 83 P.3d 497]), the writing need only mention certain "essential" (*Franklin v. Hansen* (1963) 59 Cal.2d 570, 574 [30 Cal.Rptr. 530, 381 P.2d 386]) or "meaningful" terms. (*Phillippe v. Shapell Industries, supra*, 43 Cal.3d 1247, 1259.) Ambiguities can be resolved by extrinsic evidence (*Franklin v. Hansen, supra*, 59 Cal.2d at p. 574), which serves as a reliable indicator of the parties' intent in commercial or other arm's length transactions. (See *Casa Herrera, Inc. v. Beydoun, supra*, 32 Cal.4th at p. 345.)

■ However, where assertion of the statute of frauds would cause unconscionable injury, part performance allows specific enforcement of a contract that lacks the requisite writing. (*Earhart v. William Low Co.* (1979) 25 Cal.3d 503, 514 [158 Cal.Rptr. 887, 600 P.2d 1344].) The doctrine most commonly applies in actions involving transfers of real property. (Code Civ. Proc., § 1972, subd. (a) [part performance available to enforce agreement to

convey real property absent writing required under § 1971 of same code]; *Paul v. Layne & Bowler Corp.* (1937) 9 Cal.2d 561, 564 [71 P.2d 817]; *Sutton v. Warner* (1993) 12 Cal.App.4th 415, 422 [15 Cal.Rptr.2d 632]; *Trout v. Ogilvie* (1919) 41 Cal.App. 167, 174 [182 P. 333].) Yet, part performance also has been used to enforce other contracts that violate the statute of frauds in Civil Code section 1624(a). (*Maddox v. Rainoldi* (1958) 163 Cal.App.2d 384, 390 [329 P.2d 599]; see Note, *Part Performance, Estoppel, and the California Statute of Frauds* (1951) 3 Stan. L.Rev. 281, 285–288.) In any event, to constitute part performance, the relevant acts either must "unequivocally refer[]" to the contract (*Trout v. Ogilvie, supra,* 41 Cal.App. at p. 172), or "clearly relate" to its terms. (*Sutton v. Warner, supra,* 12 Cal.App.4th at p. 422, citing *Paul v. Layne & Bowler Corp., supra,* 9 Cal.2d at p. 564.) Such conduct satisfies the evidentiary function of the statute of frauds by confirming that a bargain was in fact reached. (See *Casa Herrera, Inc. v. Beydoun, supra,* 32 Cal.4th 336, 345.)

Here, we see no evidence the Legislature intended to incorporate traditional exceptions to the statute of frauds into section 852. Indeed, the Commission Comment invoked by Husband supports the *opposite* proposition.

The 1993 Commission Comment distills the earlier Commission Report. The Commission Report does not mention part performance under the statute of frauds, or indicate that part performance can supplant the express writing dictated by section 852(a). Rather, as discussed in *MacDonald, supra,* 51 Cal.3d 262, the Commission Report criticized oral and implied transmutations, and recommended a special writing requirement to reduce confusion and abuse. By alluding to the "ordinary rules and formalities" in Civil Code section 1624(a), the Commission Comment merely implies that transmutations no longer entail *less* formality than transactions subject to the statute of frauds. Nor does the Commission Comment mean that transmutations should be treated the same as transactions subject to the statute of frauds, or that the former is not deserving of greater formality than the latter. Husband cites no legislative history to support his part performance claim.[6]

---

[6] The issue arose at oral argument whether equitable estoppel may prevent section 852(a) from invalidating an oral transmutation contract. (See *Campbell, supra,* 74 Cal.App.4th 1058, 1063–1064 [spouse cannot use estoppel to avoid statute's express writing requirement]; cf. *Earhart v. William Low Co., supra,* 25 Cal.3d 503, 514 [party may be estopped to use statute of frauds as defense to enforcement of oral contract].) Estoppel involves a reasonable and detrimental change in reliance on a contract, even where the act does not involve performance of the contract itself. (*Monarco v. Lo Greco* (1950) 35 Cal.2d 621, 623–624 [220 P.2d 737].) However, we need not consider, in this case, whether there are *any* circumstances that might estop a marital partner from invoking section 852(a). Here, the record, which Husband's counsel conceded at oral argument includes all of the pertinent facts, cannot support an estoppel theory. As counsel acknowledged, an estoppel theory in this case is entirely dependent

Husband next asks us to follow *Hall v. Hall* (1990) 222 Cal.App.3d 578 [271 Cal.Rptr. 773] (*Hall*), which enforced a *premarital* contract that violated the applicable writing requirement. (See § 1611 [contract between prospective spouses must be "in writing and signed by both parties"]; Civ. Code, former § 5311 [same], added by Stats. 1985, ch. 1315, § 3, p. 4582 and repealed by Stats. 1992, ch. 162, § 3, p. 464.) Husband claims the policies governing premarital contracts apply equally to postnuptial transmutations, and that the courts should treat these transactions the same in deciding whether and how to enforce them.

In *Hall, supra*, 222 Cal.App.3d 578, the Court of Appeal upheld a judgment enforcing an oral agreement entered between the decedent and his second wife (plaintiff) before they married giving her a life estate in his home. The decedent had prepared an amendment to his estate plan granting such an interest, but he died before the documents could be signed. The Court of Appeal rejected arguments by the representatives and heirs of the estate (i.e., the decedent's sons from his prior marriage) that the premarital agreement was unenforceable because it lacked the writing required under section 1611 and its predecessor. The court determined that plaintiff partially performed the contract by taking steps before the marriage that "unequivocally refer[red]" to its terms. (222 Cal.App.3d at p. 586.) In particular, she quit her job and retired early in exchange for the financial security of having an interest in the decedent's home. In reaching this conclusion, the court characterized section 1611 as an ordinary "statute of frauds" (222 Cal.App.3d at p. 584) to which "traditional exceptions" like part performance applied. (*Id.* at p. 587.)

Whether or not *Hall* reached a correct result under the statute there at issue, its analysis has no application here. The statutory scheme in *Hall* seeks to "*enhance* the enforceability" of agreements entered in contemplation of marriage. (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 23 [99 Cal.Rptr.2d 252, 5 P.3d 815] (*Bonds*); see § 1600 et seq. [Uniform Premarital Agreement Act].) Despite recent changes linking the voluntariness of premarital contracts to the availability of independent counsel (§ 1615, subd. (c), added by Stats. 2001, ch. 286, § 2), and despite the noncommercial nature of such contracts (*Bonds, supra*, 24 Cal.4th at pp. 24–26), prospective spouses negotiate at greater arm's length than married persons. (See § 721, subd. (b) (section 721(b)) [spouses share fiduciary relationship]; *Bonds, supra*, 24 Cal.4th at p. 27 [persons entering premarital contracts do not share fiduciary relationship]; Glass, *Trading Up: Postnuptial Agreements, Fairness, and a Principled*

---

on, and congruent with, his claim that, despite section 852(a), his execution of the deed effected a transmutation of his retirement accounts because it constituted part performance of a spousal agreement for such transmutation. Hence, recognition of an "estoppel" in this case would entirely circumvent our holding that "part performance" is *not* an exception to the strict requirements of section 852(a).

*New Suitor for California* (2004) 92 Cal. L.Rev. 215, 242 [unique emotional concerns can affect contracts between spouses].) Hence, contrary to what Husband assumes, premarital contracts are not construed and enforced under the same standards as interspousal agreements. (*Bonds, supra,* 24 Cal.4th at p. 27; *In re Marriage of Friedman* (2002) 100 Cal.App.4th 65, 72 [122 Cal.Rptr.2d 412].)

This difference is manifest here. As discussed *ante,* section 852(a) makes a valid transmutation much more difficult to accomplish than prior law allowed. The transaction requires a written document expressly acknowledging that it changes the character of marital property, and that the adversely affected spouse understands and accepts this result. As made clear in *MacDonald, supra,* 51 Cal.3d 262, 264, 272, "extrinsic evidence," such as inferences drawn from oral statements and conduct, is not a reliable substitute for the express writing that the statute demands. Similar circumstances were not present in *Hall, supra,* 222 Cal.App.3d 578. Thus, we do not apply its analysis in the present case.

Finally, Husband suggests that strict enforcement of section 852(a), as construed in *MacDonald, supra,* 51 Cal.3d 262, is unnecessary because the "fiduciary relationship" requires spouses to act with "the highest good faith and fair dealing" in their transactions with each other. (§ 721(b).)[7] Husband observes that *MacDonald* did not consider the effect of the quoted language on transmutations, because that language did not appear in the statutory scheme until after *MacDonald* was decided. (See Civ. Code, former § 5103, as amended by Stats. 1991, ch. 1026, § 2, p. 4747.) Husband also suggests that to apply section 852(a)'s express writing requirement and to find no transmutation of the retirement accounts would give Wife an "unfair advantage" under section 721(b). She would retain the benefit of the deed he signed in her favor, while he would not receive a full separate interest in his retirement accounts.

However, as the history of this case makes clear, Husband forfeited or abandoned any attack on the deed as presumptively invalid under section 721(b). (See *Bonds, supra,* 24 Cal.4th 1, 27, citing *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 293 [39 Cal.Rptr.2d 673] [advantaged spouse bears burden of showing agreement was not induced by undue influence].) The parties settled, and the trial court dismissed, all claims involving

---

[7] Section 721(b) reads in pertinent part as follows: "[A] husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners . . . ."

Husband's transfer of the deed to Wife's trust. He has not subsequently tried to set aside any benefit she obtained from that transaction. No issue involving section 721(b) and the deed is under review.

█ The claim also lacks merit. Husband does not seek to *undo* a transmutation that was so grossly one-sided and unfair as to be the product of undue influence under section 721(b). (E.g., *In re Marriage of Haines, supra,* 33 Cal.App.4th 277, 293–294.) He instead invokes these principles to *establish* a transmutation that fails to comply with the terms of section 852(a), as construed in *MacDonald, supra,* 51 Cal.3d 262. However, absent a transmutation that otherwise satisfies section 852(a), there is no basis for applying the presumption of undue influence under section 721(b). (*Campbell, supra,* 74 Cal.App.4th 1058, 1065.) Moreover, both statutes protect marital transactions from the same adverse influences. An express written agreement prevents spouses from inadvertently transmuting property through oral, implied, or other easy means. The same requirement also deters false transmutation claims after the marriage ends. Husband has shown no conflict between section 721(b) and section 852(a) affecting the character of his retirement accounts.

### Disposition

The lower courts erred in finding a valid transmutation of Husband's retirement accounts, and in characterizing such property as separate rather than community in nature. The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Werdegar, J., and Chin, J., concurred.

**MORENO, J.**—I concur. It is true, as the husband in this action, Douglas Benson, contends, that there may be circumstances in which there is a conflict between Family Code section 852, subdivision (a),[1] authorizing transmutation of property within a marriage only by means of express written declaration, and section 721, subdivision (b), imposing on spouses a fiduciary duty toward each other. Such a conflict may occur when, for example, one spouse unfairly gains a benefit from the other spouse in exchange for an orally promised transmutation that in fact has no legal effect.

This kind of unjust enrichment and breach of fiduciary duty, while suggested by the facts of the present case, are not at issue here. As the majority correctly points out, husband has settled his claim with respect to the conveyance of the house he contends was quid pro quo for the alleged oral promise to transmute his retirement accounts from community property to

---

[1] All statutory references are to the Family Code.

separate property. Therefore, he cannot validly claim before this court that he was unlawfully or inequitably disadvantaged by that conveyance. His is the narrower argument that his part performance of an agreement with his wife is an adequate substitute for the express declaration of transmutation required by section 852, subdivision (a), which the majority properly rejects. We therefore have no occasion to decide what statutory or equitable remedy would be available to make whole a spouse who has been disadvantaged by an illusory oral promise to transmute property, or what sanction may be employed against a spouse who has used section 852, subdivision (a) as a means of breaching his or her fiduciary duty and gaining unjust enrichment.