Filed 8/20/14  Marriage of Ruballos CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Marriage of JORGE A. and ROSA RUBALLOS. | B247989 |
| | (Los Angeles County Super. Ct. No. BD550156) |
| JORGE A. RUBALLOS, Appellant, v. ROSA V. RUBALLOS, Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed.

Jorge A. Ruballos, in pro. per., for Plaintiff and Appellant.

Rosa V. Ruballos, in pro. per., for Defendant and Respondent.

_____

Jorge A. Ruballos appeals from a judgment of the family law court finding that certain real property in Guatemala was acquired with community funds. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jorge A. Ruballos and Rosa V. Ruballos (now Linares)[1] were married in August 1995 and separated 16 years later in August 2011. They have two teenage children. Jorge petitioned for dissolution of the marriage on August 22, 2011. Jorge and Rosa resolved all custody, support and property issues except for the characterization (source of funds) of certain real property located in Guatemala known as Hacienda El Cerrito and the community or separate character of a debt for attorney fees.

Jorge contended the Guatemala property had been purchased by his brother as a gift for their mother; Rosa asserted community funds, including approximately $20,000 that had been kept in the couple's safe deposit box, had been used to acquire the property. Following an evidentiary hearing on October 30, 2012 at which 10 witnesses, including both Jorge and Rosa, testified, the court credited Rosa's testimony and ruled community funds had been used and Hacienda El Cerrito was community property or held for the community. (There was no dispute title to the property was in the name of Jorge's mother.) As it explained, "The court believes on balance Mrs. Ruballos was telling the truth and that Mr. Ruballos was not." The court also ruled the obligation to pay attorney fees in an unrelated property dispute was a community debt.[2]

On November 8, 2012 Jorge, through new counsel, moved to reconsider the ruling that community funds had been used to buy Hacienda El Cerrito, alleging he had just discovered his younger brother Raul Ruballos Martinez (Raul) had receipts reflecting Raul's purchase of money orders in his own name in the exact amount of the purchase

---

[1] As is customary in family law proceedings, we refer to the parties by their first names for clarity and convenience. (See *In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1139, fn. 1.)

[2] Although Jorge and Rosa are representing themselves on appeal, each was represented by counsel in the trial court.

price for Hacienda El Cerrito. According to Jorge's and Raul's declarations, those money orders were sent to their mother to give to the seller of the property in Guatemala. (Raul had been one of the witnesses on behalf of Jorge at the October 30, 2012 trial but claimed he had not previously disclosed the existence of the receipts because they "were my private papers and I did not feel the need to show my private information to everyone.")

The court held a further evidentiary hearing on March 5, 2013 at which Jorge and Raul testified. At the conclusion of the hearing the court denied the motion to reconsider, ruling once again Jorge's version of events was not credible and confirming the Guatemala property had been acquired with community funds.[3]

Judgment was entered on March 5, 2013. Jorge filed a timely notice of appeal, contending substantial evidence does not support the trial court's finding that community funds were used to purchase Hacienda El Cerrito.

## DISCUSSION

Property, wherever situated, acquired by a married person during the marriage with community funds is community property unless transmuted by transfer or agreement to separate property. (See generally *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400; *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1103; Fam. Code, §§ 760, 850.) Jorge does not contend Hacienda El Cerrito is his separate property, either by virtue of the source of the funds used to acquire it or post-acquisition transmutation. Rather, he insists the evidence presented to the family law court established his brother purchased the property as a gift for their mother and neither he nor Rosa had any interest in it whatsoever.

Substantial evidence supports the family law court's finding Jorge used community funds to acquire Hacienda El Cerrito. In evaluating Jorge's challenge, we

---

[3] Although the trial court stated the motion to reconsider was denied, in essence the court granted the motion for reconsideration under Code of Civil Procedure section 1008, held a hearing, reconsidered its prior ruling and then reaffirmed it.

view the record in the light most favorable to the prevailing party and resolve all conflicts and give the benefit of all reasonable inferences in support of the judgment. (See *Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.) We do not evaluate the credibility of the witnesses or otherwise reweigh the evidence. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514-515.) The testimony of a single witness may provide substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Rosa testified Jorge told her in 2004 he intended to buy Hacienda El Cerrito. She was opposed to the purchase because the property was in Guatemala, "but he insists even if I disagree." Rosa additionally testified she heard Jorge ask several individuals to send money on his behalf to Guatemala. Responding to Jorge's evidence he had injured his back in 2002 and from that point forward Social Security and supplemental security income (SSI) payments were his sole source of income, Rosa testified Jorge held a variety of part-time jobs after 2002. She acknowledged she was the couple's primary wage earner after Jorge's injury and estimated Jorge's and her combined annual income averaged between $30,000 and $40,000 during the relevant time period.

Finally, Rosa testified she and Jorge had $20,000 in a safe deposit box at the Glendale branch of the Bank of America to which both she and Jorge had access. In 2005 Rosa discovered the money was gone. When she confronted Jorge, after some initial denials, he eventually told her he had used the money to purchase Hacienda El Cerrito.

Rosa's father testified Jorge had told him, when the two men were together in Guatemala, that he wanted to buy Hacienda El Cerrito. On cross examination Jorge's counsel asked, "Do you know for a fact whether he actually bought that property?" Rosa's father answered, "Yes." When asked, "How do you know that?" he responded, "The person that sold it to him spoke to me . . . . And they told me Jorge already

bought."[4]  David Martinez, a friend of Rosa's and Jorge's, testified Jorge had given him $3,000 in cash and asked him to send the money by wire transfer to Guatemala to purchase some property.

Jorge testified he did not purchase Hacienda El Cerrito or advance any money toward the acquisition of the property.  Title to the property is held by Jorge's mother, and it was purchased by his brother Raul as a gift to their mother.  Insisting he lacked the resources to purchase Hacienda El Cerrito, Jorge testified he last worked in 2002; Social Security and SSI payments were his only source of income.  Rental income from a duplex in Glendale was used in its entirety to pay a portion of the secured loan on the property.  Jorge denied he and Rosa kept any funds in the Bank of America safe deposit box.

Raul testified he bought Hacienda El Cerrito and gave it as a gift to his and Jorge's mother (although Raul also said, if his mother were to sell the property, she would not keep the proceeds "because I'm the owner").  Raul paid $50,000 for the property; he borrowed money from his brother Wilfredo Ruballos and his cousin Elmer Ruballos, as well as from a friend ("Juan"), to be able to purchase the property.  He did not ask Jorge for any money.  Both Wilfredo Ruballos and Elmer Ruballos testified consistently with Raul's version of the purchase.

Given the direct conflict in the evidence presented, the trial court was entitled to credit Rosa's version of events, corroborated in part by the testimony of two other witnesses, and to disbelieve Jorge and his brothers.  Substantial evidence supported the court's ruling community funds were used to purchase Hacienda El Cerrito, including its finding that, "although modest, Mr. Ruballos had the means over time through part-time jobs to acquire the amount of money that was necessary to purchase the Hacienda El Cerrito."

Nothing presented on behalf of Jorge in support of his motion to reconsider undermined the court's conclusion.  Even if properly accepted as newly discovered

---

[4]     The court overruled Jorge's counsel's hearsay objection.

evidence within the meaning of Code of Civil Procedure section 1008, the copies of receipts for wire transfers did not indicate in any way the ultimate use of the funds involved; and Raul's testimony did little more than repeat his earlier description of his purported purchase of the property as a gift for his mother. Jorge's attempt to show Rosa had lied at the earlier hearing when she said the couple kept $20,000 in the Bank of America safe deposit box by proving she never had access to the box foundered on incontrovertible evidence that she did. The court did not abuse its discretion in once again disbelieving Jorge and denying the motion to reconsider. (See *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 42 [denial of motion under Code Civ. Proc., § 1008 reviewed for abuse of discretion]; *Lucas v. Santa Maria Public Airport Dist*. (1995) 39 Cal.App.4th 1017, 1027-1028 [same].)

## DISPOSITION

The judgment is affirmed. Rosa Ruballos (Linares) is to recover her costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.