Filed 4/21/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| ROSE SAFARIAN, | B291387 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC387615) |
| v. | |
| HARRY GOVGASSIAN et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge. Reversed and remanded.

Law Offices of Armen M. Tashjian and Armen M. Tashjian, for Plaintiff and Appellant.

Stone & Stone, Steven H. Stone; Benedon & Serlin, Gerald M. Serlin, Wendy S. Albers, for Defendants and Respondents.

———————————————

A married couple filed a fraud action against multiple defendants. While the fraud action was pending, husband filed for divorce. Husband and wife entered into a written marital property agreement that characterized any recovery in the fraud action as the separate property of each spouse. Judgment was entered against the defendants in the fraud action, but husband filed for bankruptcy prior to enforcement of the judgment. The fraud defendants, aware of the marital property agreement, entered into a settlement with the bankruptcy trustee. Next, they moved to stay collection proceedings brought by wife in the fraud action on the ground that the entire amount of the judgment was community property included in husband's bankruptcy estate and settled by the bankruptcy trustee. Wife argued that under the marital property agreement, her interest in the fraud judgment was her separate property, which was not part of husband's bankruptcy estate. Defendants argued the marital property agreement was ineffective because it did not meet the transmutation requirements of Family Code section 852,[1] which precludes extrinsic evidence to resolve ambiguities. The trial court interpreted the marital property agreement to have had no effect on the character of the judgment proceeds. The agreement specifically identified the fraud action, but it referred to the spouses' separate claims in the action; in fact, all of the claims in the fraud action were brought jointly. The trial court found the

_____

[1] All further statutory references are to the Family Code unless otherwise specified.

2

agreement was impermissibly vague, so it failed to transmute the community property judgment proceeds to separate property interests. The trial court granted the protective order.

On appeal, wife contends the fraud defendants do not have standing to challenge the property agreement based on the transmutation requirements of section 852. We conclude a transmutation that does not meet the requirements of section 852 is voidable, rather than void. Since the defendants are not parties to the marital property agreement, they cannot rely on section 852 to invalidate the agreement. We reverse and remand for further proceedings to determine the effect of the marital property agreement under ordinary rules of contract interpretation.

## FACTUAL AND PROCEDURAL BACKGROUND

### Fraud Trial and Marital Property Agreement

On March 20, 2008, plaintiff and appellant Rose Safarian (Wife) and her husband Armen Sanamyan (Husband) filed an action against defendants and appellants Harry Govgassian and Alisa Agadjanian, as well as against Elsagav S. Shaham, M.D., Hippocratic Management Services, Inc., and Silka Enterprises Inc., doing business as Salud Family Medical Clinic, for fraud and other claims arising out of an investment in a medical clinic (the fraud action).

3

Two months later in May 2008, Husband filed a petition for dissolution of marriage. Wife and Husband executed a "marital settlement agreement" at the end of July 2008. The express purpose of the agreement was to make a final and complete settlement of all rights and obligations between them, including all property rights. Provision 1, subdivision j, of the agreement stated, "Except as otherwise expressly provided in this Agreement, each Party, hereby releases the other from all inter-spousal obligations whether incurred before or after the effective date, and all claims to the property of the other. This release extends to all claims based on the rights that have accrued before the marriage, including, but not limited to, property and support claims. Additionally, it is agreed that each Party, while engaged in joint prosecution, will be entitled to maintain his or her separate claims for damages pertaining to the alleged fraud actions pertaining to two litigation matters, in reference to Ummba Grill Restaurant and Silka Enterprises, Inc., (collectively referred to as 'Govgassian Fraud Cases'). The proceeds recovered from these actions will be the separate property of each Party. The parties have considered such claims in this agreement."

In addition, provision 10 of the agreement stated, "The parties acknowledge that they have previously divided all of their community assets and liabilities as well as their separate property, between them to their satisfaction. Each party hereby confirms such division and transfers to the other as his or her separate property all such property in

4

their personal possession or title, including but not limited to the items stated in 1(j) above."

The agreement stated it was valid and enforceable "upon signing by both parties regardless whether a judgment for dissolution is entered or not." The effective date of the agreement was the date of execution by both parties. Husband signed the agreement on July 21, 2008, and Wife signed the agreement on July 22, 2008.

Three years later, on August 20, 2012, judgment was entered after a jury trial in the fraud action in favor of Wife and Husband. Hippocratic's default had been entered. The jury found the defendants conspired to defraud the plaintiffs, whose total damages were $460,000 as follows: $240,000 for loss of investment or loans, $20,000 for Wife's unpaid wages, $100,000 for Wife's noneconomic losses, and $100,000 for Husband's noneconomic losses. The jury also found the defendants liable for punitive damages as follows: $250,000 as against Govgassian, $125,000 as against Agadjanian, $100,000 as against Shaham, and $25,000 as against Silka. The judgment ordered recovery of $460,000 to Wife and Husband from the defendants jointly and severably, an additional $250,000 from Govgassian, an additional $125,000 from Agadjanian, an additional $100,000 from Shaham, and an additional $25,000 from Silka.

Govgassian and Agadjanian filed a notice of appeal, as did Shaham. But on December 18, 2012, the appeal filed by Govgassian and Agadjanian was dismissed based on their default.

## Bankruptcy Filing

On December 13, 2013, Husband filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. He expressly stated that it was not a joint case and he was unmarried. He listed the dissolution proceeding as a pending action to which he was a party as well as other civil litigation not relevant here. Husband did not list the fraud action in his original bankruptcy petition. The record on appeal does not contain an amended petition, but Govgassian and Agadjanian have represented in pleadings in this matter that Husband filed an amended bankruptcy petition on February 11, 2014, listing the judgment in the fraud action. The bankruptcy court granted a discharge to Husband on April 7, 2014.

Four months later, this appellate court affirmed the judgment against Shaham in the fraud action in an unpublished opinion. (*Safarian v. Shaham* (Oct. 9, 2014, B244709).)

Govgassian and Agadjanian contacted bankruptcy trustee Howard Ehrenberg to discuss settlement of the judgment in the fraud action. In early 2016, Ehrenberg provided notice in the bankruptcy proceedings of a motion to approve a proposed settlement with the judgment debtors. In response, the attorney who represented Wife and Husband in the fraud action expressed concern that the proposed settlement might compromise Wife's interest in the judgment. Ehrenberg did not believe he had settled Wife's

claim and assured the attorney that the judgment debtors did not include Wife's interest in the settlement. The following week, Ehrenberg changed his assessment and stated he could not confirm that the settlement did not extend to Wife's interest, because the judgment was a community asset included in the bankruptcy estate. Husband's bankruptcy attorney provided Ehrenberg with a copy of the marital property agreement, and Ehrenberg withdrew his motion to approve the settlement. Ehrenberg concluded Wife had an interest in the fraud judgment that was separate from the bankruptcy estate, and he did not have any authority to compromise Wife's interest. Separate mediations were held.

On August 19, 2016, Ehrenberg entered into an agreement with Govgassian and Agadjanian to accept payment in settlement of Husband's rights and interest to collect on the judgment. The bankruptcy court approved the settlement of the judgment in November 2016, and Govgassian and Agadjanian completed payment of the judgment in May 2017. On July 26, 2017, the bankruptcy trustee executed a satisfaction of judgment that clearly stated it was in full satisfaction of Husband's interest only.

**Protective Order to Stay Collection Proceedings**

On March 6, 2018, Govgassian and Agadjanian filed a motion in the fraud action for a protective order staying all collection proceedings. They argued that even if a marital

7

settlement agreement existed, the causes of action and recovery in the fraud case were community property as a matter of law, because no judgment of dissolution or approval of the agreement dividing the property had been entered. Community property, including the non-debtor's spouse's share, became part of the bankruptcy estate by law. As a result, the satisfaction of judgment signed by the bankruptcy trustee satisfied the entire fraud judgment.

Govgassian and Agadjanian submitted Ehrenberg's declaration in support of their motion. Ehrenberg stated that the fraud judgment was an asset of the bankruptcy estate, but the bankruptcy court had not ruled on whether the judgment was community or separate property. On August 19, 2019, Ehrenberg entered into a settlement agreement with Govgassian and Agadjanian to accept payment in full and final settlement of the bankruptcy debtor's rights and interest to collect upon the judgment. Because the payment extinguished the entire asset held by the bankruptcy estate, Ehrenberg executed a satisfaction of judgment which states that it is as to Husband's interest only. Ehrenberg did not want to prejudice any rights that Wife might have in the judgment. It was his understanding that if the judgment were a community asset, the entire judgment was satisfied by the payment.

Wife opposed the motion for a protective order. She argued that under her agreement with Husband, she held her interest in the fraud judgment as her separate property,

and therefore, her interest was never part of Husband's bankruptcy estate.

She submitted her attorney's declaration, as well as a reporter's transcript of an April 4, 2018 hearing in bankruptcy court. Ehrenberg testified at the hearing that the first time Wife's interest was raised to him was when her attorney in the fraud action expressed concern on January 20, 2016, about the proposed settlement. The settlement agreement that Ehrenberg signed with Govgassian and Agadjanian was solely with respect to Husband's interest in the judgment.

Wife also submitted Ehrenberg's declaration, her own declaration, the dissolution petition, and the property agreement. She declared that she had no involvement in the bankruptcy proceedings.

Govgassian and Agadjanian filed a reply. They argued the provisions of the property agreement were ambiguous and failed to transmute Wife's community property interest in the fraud judgment into a separate property interest, citing section 852 for the first time.

With the reply, Govgassian and Agadjanian submitted the declaration of family law specialist Evan Itzkowitz. Itzkowitz opined that the terms of the property agreement were not sufficient to transmute the causes of action and recovery in the fraud action from community property to the separate property of Wife and Husband. They also submitted a copy of the settlement agreement that they

9

entered into with Ehrenberg, and an email exchange between Ehrenberg and the attorney in the fraud action.

Wife objected to the new evidence filed with the reply. A hearing was held on June 4, 2018. Itzkowitz argued at the hearing on behalf of Govgassian and Agadjanian that the court could not "interpret" the property agreement. Section 852 required an express declaration that the character of the property was being changed to effect a transmutation, and no extrinsic evidence was permitted. Itzkowitz insisted the agreement lacked the type of granting language required to change the character of the property, such as "I grant it to you" or "I give it to you." Wife's attorney responded that the language of the agreement was clear, it divided Wife and Husband's property, and the parties to the agreement had no confusion or disagreement over the terms. Itzkowitz replied that the agreement was vague, because it referred to separate claims for damages, when there were no separate claims for damages. Wife's attorney responded that the agreement was sufficiently specific to accomplish the division of property, because it referred to the specific litigation and the proceeds of any recovery. The trial court sustained Wife's objections to the new material submitted with the reply and took the matter under submission.

Later that day, the trial court granted the motion for a protective order. The court found there were no separate claims by either Wife or Husband in the fraud action. All of the claims in the action were joint, and there was no separate damages recovery. "Therefore, the language in the

Marital Settlement Agreement is impermissibly vague and unenforceable, thus cannot be considered to have transmuted any such property from 'community' to 'separate' property. Accordingly, since there was no separate property as part of the proceeds of this lawsuit – it was all community property – the entirety of the judgment against Harry Govgassian and Alisa Agajanian was satisfied through the bankruptcy court proceedings." Wife filed a timely notice of appeal from the order.

## DISCUSSION

## <u>Standard of Review</u>

Marital property settlement agreements are favored under California law (*Adams v. Adams* (1947) 29 Cal.2d 621, 624), and governed by general contract principles (*Tanner v. Tanner* (1997) 57 Cal.App.4th 419, 424).[2] "We review the

---

[2] Because we conclude Govgassian and Agadjanian do not have standing to raise section 852, we need not address whether the principles that typically apply to interpret a contract in the absence of extrinsic evidence also apply to determine the validity of a transmutation under section 852. These principles include the fundamental goal of contract interpretation "to give effect to the mutual intention of the parties." (Civ. Code, § 1636; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) In general, we determine the intent of the parties from the written contract alone, but may consider the circumstances under which the

11

interpretation of a statute and its application to undisputed facts de novo. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081–1082.) 'In interpreting the statutory language at issue, "[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent." [Citation.] The process of interpreting the statute to ascertain that intent may involve up to three steps. [Citations.] As other courts have noted, the key to statutory interpretation is applying the rules of statutory construction in their proper sequence. [Citations.] We have explained this three-step sequence as follows: "we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction." [Citation.]' (*Id.* at p. 1082.)" (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1422.)

---

contract was made and its subject matter. (Civ. Code, §§ 1639, 1647; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 (*Hess*).) We interpret the provisions within the context of the contract as a whole, not in isolation, with the aim of giving effect to every provision, rather than assigning a meaning that makes it inoperative, inequitable, or absurd. (Civ. Code, §§ 1641, 1643; *Camacho v. Target Corp.* (2018) 24 Cal.App.5th 291, 306.) For a contract to be ambiguous, the language must be reasonably susceptible of more than one construction. (*In re Marriage of Begian & Sarajian* (2018) 31 Cal.App.5th 506, 512.)

**Statutory Scheme Governing Transmutations**

To determine whether third parties have the power to invalidate marital property agreements that fail to meet the requirements of section 852, we must review the statutory scheme governing transmutations. The property rights provided to spouses by statute may be altered through a marital property agreement. (§ 1500; *Litke O'Farrell, LLC v. Tipton* (2012) 204 Cal.App.4th 1178, 1183.) Married people can transmute community property to separate and separate property to community by agreement or transfer. (§ 850, subds. (a) & (b).)[3]

Under section 852, a transmutation "is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." (§ 852, subd. (a).)[4] The writing must contain an "express declaration" that

_____

[3] Section 850 provides: "Subject to Sections 851 to 853, inclusive, married persons may by agreement or transfer, with or without consideration, do any of the following: [¶] (a) Transmute community property to separate property of either spouse. [¶] (b) Transmute separate property of either spouse to community property. [¶] (c) Transmute separate property of one spouse to separate property of the other spouse."

[4] Section 852 provides in full: "(a) A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented

13

"expressly states that the characterization or ownership of the property is being changed." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 272 (*MacDonald*); *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1100 (*Benson*).) Specific terminology, such as "transmutation," "community property" or "separate property," is not required, but "the writing must reflect a transmutation on its face, and must eliminate the need to consider other evidence in divining this intent." (*Benson, supra,* 36 Cal.4th at p. 1106.)

Prior to the enactment of section 852, spouses could easily transmute property, including through oral statements or implications from conduct. (*MacDonald,*

---

to, or accepted by the spouse whose interest in the property is adversely affected. [¶] (b) A transmutation of real property is not effective as to third parties without notice thereof unless recorded. [¶] (c) This section does not apply to a gift between the spouses of clothing, wearing apparel, jewelry, or other tangible articles of a personal nature that is used solely or principally by the spouse to whom the gift is made and that is not substantial in value taking into account the circumstances of the marriage. [¶] (d) Nothing in this section affects the law governing characterization of property in which separate property and community property are commingled or otherwise combined. [¶] (e) This section does not apply to or affect a transmutation of property made before January 1, 1985, and the law that would otherwise be applicable to that transmutation shall continue to apply."

*supra*, 51 Cal.3d at pp. 268–269.)[5]  The California Law Revision Commission (the Commission) reported to the Legislature that "California law permits an oral transmutation or transfer of property between the spouses notwithstanding the statute of frauds.  The rule recognizes the convenience and practical informality of interspousal transfers.  However, the rule of easy transmutation has also generated extensive litigation in dissolution proceedings.  It encourages a spouse, after the marriage has ended, to transform a passing comment into an 'agreement' or even to commit perjury by manufacturing an oral or implied transmutation.  [¶]  The convenience and practice of informality recognized by the rule permitting oral transmutations must be balanced against the danger of fraud and increased litigation caused by it.  The public expects there to be formality and written documentation of real property transactions, just as it expects there to be

_____

[5] "*MacDonald, supra*, 51 Cal.3d 262, addressed former Civil Code section 5110.730.  (Added by Stats. 1984, ch. 1733, § 3, p. 6302.)  After *MacDonald* was decided, and as part of a comprehensive reorganization of the law, the Legislature repealed former Civil Code section 5110.730 (Stats. 1992, ch. 162, § 3, p. 464), and replaced it with Family Code section 852.  (Stats. 1992, ch. 162, § 10, p. 492, operative Jan. 1, 1994.)  Both versions contain the same language.  We will refer solely to section 852, even when discussing its predecessor under *MacDonald*." (*Benson, supra*, 36 Cal.4th at pp. 1104–1105, fn. 4.)  As in *Benson*, references to section 852 include its predecessor.

formality in dealings with personal property involving documentary evidence of title, such as automobiles, bank accounts, and shares of stock.  Most people would find an oral transfer of such property, even between spouses, to be suspect and probably fraudulent, either as to creditors or between each other.  [¶]  California law should continue to recognize informal transmutations for certain personal property gifts between the spouses, but should require a writing for the transmutation of real property or other personal property."  (Recommendation Relating to Marital Property Presumptions and Transmutations (Nov. 1983) 17 Cal. Law Revision Com. Rep. (1984) pp. 213–214, fns. omitted (Commission Report).)

The Legislature enacted the writing requirement of section 852 to prevent transmutations based on easily manipulated and unreliable evidence.  (*MacDonald, supra*, 51 Cal.3d at p. 269; *Benson, supra*, 36 Cal.4th at p. 1106.)  The Legislature sought to increase certainty that a transmutation occurred, discourage perjury in marital property disputes, and reduce litigation to resolve such matters.  (*Benson, supra*, 36 Cal.4th at p. 1100.)  Extrinsic evidence is not admissible to prove a writing effected a transmutation.  (*Ibid.*)  The Legislature intended "to create a writing requirement which enables courts to validate transmutations without resort to extrinsic evidence and, thus, without encouraging perjury and the proliferation of litigation."  (*MacDonald, supra*, 51 Cal.3d at p. 272.)

16

The Commission's comment to the statutory text explained that "[Section 852] imposes formalities on interspousal transmutations for the purpose of increasing certainty in the determination whether a transmutation has in fact occurred. [Section 852] makes clear that the ordinary rules and formalities applicable to real property transfers apply also to transmutations of real property between the spouses. See Civ. Code §§ 1091 and 1624 (statute of frauds), 1213–1217 (effect of recording). This overrules existing case law. See, *e.g.*, *Woods v. Security First Nat'l Bank*, 46 Cal.2d 697, 701, 299 P.2d 657, 659 (1956). [Section 852] also overrules existing law that permits oral transmutation of personal property; however, transmutation by gift of certain personal property is recognized." (Commission Report, *supra*, at pp. 224–225.)

## Standing to Raise Section 852

Wife contends Govgassian and Agadjanian do not have standing to challenge the validity of the marital property agreement under section 852.[6] We agree.

---

[6] Although Wife did not specifically raise the issue of standing in the trial court, both parties agree this court has discretion to consider this threshold issue on appeal. (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 316, citing *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436 ["'even where a legal argument was not raised in the trial court, we have discretion to consider it when the theory raised for the first

### A. Third Party Standing Depends on Whether a Defective Transmutation is Void or Merely Voidable

"In general, California law does not give a party personal standing to assert rights or interests belonging solely to others. (See Code Civ. Proc., § 367 [action must be brought by or on behalf of the real party in interest]; *Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 992.)" (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 936, fn. omitted (*Yvanova*).) Whether a third party can invalidate a transmutation agreement that fails to meet the requirements of section 852 depends whether the defective agreement is void or simply voidable.

"A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.' (*Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1362.) 'Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it . . . .' (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644.)" (*Yvanova, supra,* 62 Cal.4th at p. 929.)

"A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the

time on appeal is a pure question of law applied to undisputed facts.'"].)

18

contract, or by ratification of the contract to extinguish the power of avoidance.' (Rest.2d Contracts, § 7, p. 20.) It may be declared void but is not void in itself. (*Little v. CFS Service Corp.*, *supra*, 188 Cal.App.3d at p. 1358.) Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties. (Rest.2d Contracts, § 7; *Aronoff v. Albanese* (N.Y.App.Div. 1982) 85 A.D.2d 3.)" (*Yvanova*, *supra*, 62 Cal.4th at p. 930.)

Only the contracting parties have the power to ratify or avoid a voidable agreement; "the transaction is not void unless and until one of the parties takes steps to make it so." (*Yvanova*, *supra*, 62 Cal.4th at p. 936 [discussing void and voidable assignments].) A litigant who alleges an agreement is void, however, is not enforcing the terms, but instead asserting that the agreement is void ab initio. (*Ibid.*) "Unlike a voidable transaction, a void one cannot be ratified or validated by the parties to it even if they so desire. (*Colby v. Title Ins. and Trust Co.*, *supra*, 160 Cal. at p. 644; *Aronoff v. Albanese*, *supra*, 446 N.Y.S.2d at p. 370.)" (*Yvanova*, *supra*, 62 Cal.4th at p. 936.)

### B. The Statutory Language of Section 852 Supports an Interpretation that Defective Transmutations are Voidable, not Void

Section 852 provides that a transmutation is "not valid" unless made in a writing meeting the statutory

requirements.  We must determine the meaning of the phrase "not valid" within the context of section 852.

"Not valid" does not necessarily mean "void."  (See *Guthman v. Moss* (1984) 150 Cal.App.3d 501, 507–508 (*Guthman*) [statute providing that liquidated damages provisions are "invalid" unless separately signed by the parties interpreted to mean that provisions failing to meet statutory requirements are voidable at the buyer's option, not void].)  "Where a word of common usage has more than one meaning, the court should adopt the one which will best attain the purposes of the Legislature, keeping in mind the objectives sought to be achieved as well as the evil to be prevented."  (*Id.* at p. 507.)

"Unless a statute expressly deprives the parties of their right to sue on a contract made in violation of that statute, the right to recover on the contract will not be denied, if denial of recovery would be out of proportion to the demands of public policy.  (6 Williston (4th ed. 1995) Illegal Agreements, § 12:4, pp. 47–51.)  'Thus, unless no other conclusion is possible from the words of a statute, it should not be held to make agreements contravening it totally void.'  (*Ibid.*)"  (*Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 814–815.)

Section 852 does not expressly provide that a defective transmutation is "void."  Section 852 is a "statute of frauds" for the property transmutations of married people.  (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 766, fn. 5.)  Nothing in the statute or the legislative history suggests that spouses

20

cannot affirm or ratify a defective transmutation agreement through a subsequent valid agreement. A marital property agreement that does not contain an express declaration of transmutation is not void, illegal, or inherently wrong because it fails to comply with the requirements of section 852. Section 852 establishes a rule of evidence, similar to the statute of frauds. We conclude a transmutation that fails to meet the requirements of section 852 is voidable, not void. A spouse may elect to invoke the protection of the statute or affirm the property agreement, but a stranger to the agreement does not have standing to claim the spouses will not abide by their agreement regardless of the defect. A third party who is not a successor in interest to the rights of one of the parties to the agreement cannot raise the invalidity of a transmutation under section 852.

## C. Contracts Violating Similar Statutes of Frauds are Voidable

Our interpretation of the phrase "not valid" in section 852 is supported by case law interpreting the term "invalid" in similar statutes. "'The meaning of the language of the statute can appear either on [its face] or from any "established . . . common law meaning." [Citation.]' (*People v. Mirmirani* (1981) 30 Cal.3d 375, 384, per Bird, C. J., with two justices concurring and one justice specially concurring.)" (*Guthman, supra,* 150 Cal.App.3d at p. 509.)

21

Contracts that violate similar statutes have been held to be voidable, rather than void.

California's statute of frauds, Civil Code section 1624, subdivision (a) provides, "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged . . . ."  It is well established under California law that "a contract falling within the operation of the statute, but made in contravention thereof, is not invalid in the sense that it is void.  It is merely voidable."  (*O'Brien v. O'Brien* (1925) 197 Cal. 577, 586; see also *Ayoob v. Ayoob* (1946) 74 Cal.App.2d 236, 242 (*Ayoob*).)  "'Such a contract, if otherwise valid, remains so, and the sole effect of the statute is to render it unenforceable by one party against the will of the other who abandons or repudiates it.' [Citations.]"  (*O'Brien*, *supra*, at p. 586.)

"Similarly, in *Estate of Reardon* (1966) 243 Cal.App.2d 221, 229, the court held:  'The word[ ] . . . "invalid," when appearing in statutes which are not for the benefit of the public at large, [is] regarded as equivalent to "voidable" where none other than a particular person or class of persons is the object of the statutory protection.'  Thus, the idea that invalid may mean voidable only is not novel to California law.  And, when legislation has been applied in judicial decisions and then a subsequent statute on an analogous subject employs identical language, it is presumed that the Legislature intended the language be given a like interpretation in applying the new enactment.  (*Nishikawa*

*Farms, Inc. v. Mahony* (1977) 66 Cal.App.3d 781, 787.)"
(*Guthman, supra,* 150 Cal. App. 3d at p. 509.)

A transferee or successor in interest to the rights of the contracting party, such as the party's grantee, heir, or personal representative, can take advantage of the statute of frauds in the same manner as the contracting party could have. (*O'Banion v. Paradiso* (1964) 61 Cal.2d 559, 562 (*O'Banion*).) "There are no similar policies involved where the third person seeking to raise the statute is not in privity with a party to the contract. If such persons were able to assert the statute to invalidate a contract, they could invalidate contracts which the parties themselves were in favor of enforcing." (*O'Banion, supra,* 61 Cal.2d at p. 563; see also *Wood Estate Co. v. Chanslor* (1930) 209 Cal. 241, 250–251; *Bumb v. Bennett* (1958) 51 Cal.2d 294, 302.)

The California Supreme Court's decision in *Benson* does not alter our conclusion that a marital property agreement in violation of Section 852 is merely voidable. The *Benson* court found that the Legislature did not intend to incorporate traditional exceptions to the general statute of frauds, such as part performance, as a substitute for Section 852's requirement of an express written statement. (*Benson, supra,* 36 Cal.4th at pp. 1100, 1109.) "By insisting upon a special writing expressly changing the character of the disputed property, *MacDonald* all but decided the section 852(a) is not satisfied where no such writing exists at all." (*Id.* at p. 1100.) However, the court's holding that section 852 is not satisfied by anything less than an express

23

declaration in writing does not preclude the statute from allowing parties to affirm or ratify a defective transmutation through a subsequent agreement that meets the writing requirements of the statute.

Contracts violating a similar writing requirement enacted for the protection of spouses in section 1102, formerly Civil Code section 5127, have been interpreted to be voidable, rather than void. Under section 1102, an instrument selling, conveying, encumbering, or leasing community property for more than one year must be executed by both spouses. (§ 1102, subd. (a).) An instrument that falls within section 1102 which is not signed by both spouses is not void, however, but merely voidable. (*Clar v. Cacciola* (1987) 193 Cal.App.3d 1032, 1036–1037.) A stranger to the agreement has no standing to challenge its validity on the ground that it was not signed by both spouses in accordance with section 1102. (*Id.* at p. 1037.) "[Section 1102] was designed to protect a spouse from the unauthorized alienation or encumbering of marital property by the other spouse; it has never been interpreted in such a way as to provide a means whereby a third party creditor of the married couple may challenge and void instruments signed by only one of the spouses." (*Ibid.*)

We note the Law Revision Commission studying transmutations reported that "[m]ost people would find an oral transfer of such property, even between spouses, to be suspect and probably fraudulent, either as to creditors or between each other." (Recommendation Relating to Marital

24

Property Presumptions and Transmutations (Nov. 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 214.) Two provisions were enacted as part of the statutory scheme governing transmutations to specifically protect the rights of creditors and third parties. Section 851, former Civil Code section 5110.720, states that transmutations are subject to the laws governing fraudulent transfers. (§ 851.) Subdivision (b) of section 852 provides that a transmutation of real property is not effective as to third parties without notice unless the transmutation is recorded. Neither of these provisions enacted to protect the rights of creditors and third parties apply in this case.

Govgassian and Agadjanian cannot invalidate the marital property agreement under section 852. To the extent the terms of the marital property agreement are ambiguous, the intent of the parties should be determined on remand in accordance with ordinary principles of contract interpretation.

## DISPOSITION

The post-judgment order granting a protective order is reversed and remanded for further proceedings.  Appellant Rose Safarian is awarded her costs on appeal.


MOOR, J.

We concur:


RUBIN P. J.


BAKER, J.