Filed 8/4/25  Marriage of Powers CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re the Marriage of KELLEY and BRUCE POWERS. | C099522 |
| KELLEY J. POWERS, | (Super. Ct. No. SDR0040027) |
| Respondent, | |
| v. | |
| BRUCE R. POWERS, | |
| Appellant. | |

Marital dissolution proceedings between appellant Bruce Powers and respondent Kelley Widrin (formerly Kelley Powers) commenced in 2012.  The trial court entered judgment in 2015.  Postjudgment litigation, however, continues.  Powers, in propria persona, appeals from three postjudgment orders.  A July 3, 2023, order directed him to reimburse Widrin $14,466 for expenses she incurred in duplicating the community's photo and video collection.  A November 1, 2023, order reduced spousal support payable

1

by Powers to Widrin from $1,000 monthly to zero, permanently terminated jurisdiction over spousal support, and denied Powers's request for reimbursement for several years of spousal support "overpayment." And a June 26, 2024, order made certain directives for the division of two retirement accounts, held in Powers's name but agreed to be community property, and imposed monetary sanctions on Powers.

In his opening brief, Powers makes 17 arguments challenging these three postjudgment orders. We will modify the July 3, 2023, order by striking the portion granting Widrin's request for $14,466 for media duplication and remand the matter for a new determination. We will affirm the November 1, 2023, and June 26, 2024, orders.

BACKGROUND

Widrin and Powers married in 1993 and stipulated to a separation date of November 1, 2011. Dissolution proceedings commenced in 2012. In August 2014, following trial, the trial court entered a tentative decision. Of relevance here, the trial court determined that Powers had to pay Widrin $1,000 per month in postjudgment spousal support. The tentative decision also directed Widrin's attorney "to adjust the Propertizer that is attached to her closing brief to reflect all of the Court's findings regarding division of property and support. . . . This Propertizer will be incorporated into this Tentative Decision. Preliminarily, without accounting for the arrears owing for child support and spousal support pursuant to the agreed upon bonus schedule, the total equalizing payment due from [Powers] to [Widrin] is $185,529.00." For context, the " 'Propertizer' is commercial software that divides community assets and debts." (*Welch v. Welch* (2022) 79 Cal.App.5th 283, 291, fn. 5.)

Following argument, the trial court issued its statement of decision, which incorporated the tentative decision. Of relevance, the court stated: "Based on the submission of further Objections by [Powers] to the proposed Propertizer, and the submission of a new Propertizer by Attorney for [Widrin] which accurately incorporates all of the findings of the Court herein, the Court hereby . . . attaches the revised

2

Propertizer to this Statement of Decision, and finds that the total equalizing payment due from [Powers] to [Widrin] is the sum of $185,476.80." An "Item Detail Report," identified by Powers as the Propertizer, is included in Powers's appendix. It includes the equalizing payment from Powers to Widrin in the amount of $185,476.

Neither the tentative decision nor the statement of decision refer by name to the Motorola 401(k) account or the Principal Life IRA, both of which were retirement accounts in Powers's name and both of which are at issue in this appeal. Nor does the tentative decision or statement of decision address the parties' photo and video collection which is also at issue here.

*The 2015 Judgment*

The trial court entered its judgment in August 2015, incorporating the statement of decision. Among the provisions of the judgment relevant to the issues before us are the following:

"The Motorola 401(k) in [Powers's] name is confirmed to be entirely community in character and shall be divided equally between the parties, with the parties to equally share any cost.

"The Princip[al] Life IRA in [Powers's] name is confirmed to be entirely community in character and shall be divided equally between the parties, with the parties to equally share any cost.

"The Community Photo Collection: The twelve (12) bins of professional and personal photographs, negative[s], videos, photograph albums, and other photographs are to be duplicated. The bins will be released from [Powers's] prior counsel to [Widrin], and maintained in her possession pending duplication. The photographs will be duplicated at the equally shared costs of the parties upon demand of [Powers] [citation]. [¶] The photographs in Bins 1 - 7 shall be reviewed by [Powers] and he shall flag the photographs he desires. [Widrin] shall duplicate those photos at Costco or Sam's Club. [¶] The professional photographs in Bin 8 will be duplicated at their original size at

3

Photo Source. These framed and professional photographs will be selected between original and duplicates in a round-robin fashion. [Widrin] shall [have] the right to execute the first pick by win of a coin toss. [¶] The sports photographs in Bin 9 shall be divided in a round-robin fashion, with [Widrin] to have the right to execute the first pick. If either party desires a copy of the other party's pick, those photos shall also be duplicated at Costco or Sam's Club at equally shared cost to the parties. [¶] Bin 10 shall be reviewed by [Powers] and he shall flag the photographs he desires to have duplicated. [Widrin] shall duplicate these at the equally shared costs of the parties at Costco or Sam's Club. The remaining photographs in this bin shall be awarded to [Widrin]. [¶] The 210 tapes in Bin 11 shall be divided in a round-robin fashion, with [Powers] having the right to execute the first pick. If either party wishes any tape duplicated from the other party's selections, they will be duplicated at equally shared costs. [¶] The DVD's shall be divided in the same manner as Bin 11, with [Widrin] to have the right to execute the first pick in the round-robin. [¶] [Powers] shall provide [Widrin] with any technology in his possession to view the small tapes and older technology. [Powers] shall also provide his electronic photographs to [Widrin] for duplication."

The 2015 judgment also ordered Powers to pay Widrin $1,000 per month in spousal support, "continuing until the death of either party or further order of the court." The judgment further ordered "that total payment to [Widrin], including equalizing payment for community assets, reimbursement for educational costs and interest to May 4, 2015, arrears on support and interest thereon to May 4, 2015, sanctions, and attorney fee awards, but excluding the 1430 shares of NetSuite stock from the E*Trade account, is $185,476.00, due and payable upon entry of Judgment."

On Powers's appeal from the judgment, another panel of this court affirmed in all respects with one exception not relevant here. (*Powers v. Powers* (Mar. 19, 2018, C080319) [nonpub. opn.].)

4

## DISCUSSION

### I

### *The Appellant's Burden and Self-Represented Litigants*

At the outset, we reiterate certain aspects of the appellate process. " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766.)

A self-represented litigant, such as Powers, "is entitled to the same but no greater consideration than other litigants." (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861.) "Accordingly, he must follow the rules of appellate procedure. [Citations.] Those rules require an appellate brief to support each point by argument and, if possible, by citation to authority and to provide a citation to the record for a factual assertion. [Citations.] '[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]. We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' [Citations.] Further, we may treat a point that is not supported by cogent legal argument as forfeited." (*Ibid.*; see Cal. Rules of Court, rule 8.204(a)(1)(B), (C).)

### II

### *July 3, 2023, Order on Media Duplication*

A. *Additional Background*

In a request filed July 27, 2018, Widrin sought orders setting a deadline for Powers to provide his digital photo collection to Widrin, and awarding Widrin the family photo collection excluding sorted duplicates.

On November 19, 2018, the parties entered into a stipulation addressing the photo collection and reimbursement for duplication expenses, under which the parties agreed to meet on December 10, 2018, to divide bins of photos. The parties also agreed to submit declarations detailing their reimbursement claims for duplication costs. According to Widrin, however, Powers failed to attend the planned meeting. The trial court vacated the November 19, 2018, stipulation.

On February 24, 2023, Widrin filed a request for orders relating to photograph and video collections. Widrin stated that she had 11 media bins. She proposed scanning and reprinting all photographs in bins 1 through 7 herself. She stated that estimates for the cost of reproduction were more than $210 per bin. Widrin noted that, under the judgment, the parties were to equally divide the cost of duplication. Therefore, according to Widrin, the duplication costs for bins 1 through 7 would amount to $735 to each party, based on a cost of $210 per bin, times seven bins, divided by two.

Bin 8 contained framed and/or professional photographs. Widrin had already paid to have these photographs duplicated. She noted that pursuant to the since-vacated stipulation, Powers was required to reimburse her $206.36 for photo duplication of bin 8 (the stipulation recited the amount of $206.46). Therefore, Widrin requested that Powers be ordered to reimburse her $206.36, and, upon payment, she would provide Powers with one-half of the originals and one-half of the duplicates.

Bin 9 contained professional photographs. Widrin proposed that she would scan and print the photographs, and requested that Powers pay half of the estimated $150 cost.

Widrin represented that bin 10 contained photographs duplicated in other bins. She requested that bin 10 be awarded to her outright.

Bin 11 contained approximately 200 videotapes. Under the vacated stipulation, Powers had agreed to furnish Widrin with equipment to review the videos, but he had not done so. Widrin requested Powers be ordered to furnish the necessary equipment, and that she then be afforded time to review the videotapes. Widrin further requested that, if

6

Powers wanted any of the recordings, he be ordered to pay half the cost of outsourcing duplication.

Widrin included an itemization for expenses she had incurred in relation to the photograph collection over the prior five years. The total amount Widrin expended was $845.14. Widrin also noted that she sorted photographs herself, and refused to reimburse Powers for his expense of having his attorney's office staff sort photographs for him.

Lastly, Widrin sought to have Powers reimburse her for the $1,914.53 in attorney fees and costs she incurred as a result of Powers's failure to appear for the parties' December 10, 2018, meeting.

Powers filed his own request for orders, seeking the return of photo and video property to him for duplication. He stated that he had professional equipment to complete the task, and where such was not possible, the parties could select photographs in a round-robin fashion. Powers also requested the imposition of sanctions against Widrin.

In findings and order after a hearing, the trial court ordered all photos and videos duplicated by May 26, 2023. The court ordered Widrin to advance the costs of duplication, and stated that allocation of costs would be addressed at a hearing on May 30, 2023. The court denied Powers's request for sanctions.

At the hearing on May 30, 2023, Widrin stated that she had completed duplication of more than 13,000 photographs personally and the videos through a service. Widrin's attorney represented that the cost of duplication, not including Widrin's time, was $8,466.

Powers stated that he had incurred $7,962.50 in costs for collating photographs. Widrin countered that Powers incurred those expenses through attorney fees and paralegal fees, and Widrin never agreed to split those expenses. According to Widrin, both parties were supposed to sort and collate the photograph collection, and she did so, but Powers hired paralegals to do his collating. Thus, those were expenses to which Widrin did not agree. Rather, according to Widrin, the only matter over which the trial

7

court retained jurisdiction was the duplication cost. Widrin's attorney noted that Widrin had not sought reimbursement for the time she or her staff spent on the project, and stated that if the court were to entertain such expense requests, they would submit additional documentation.

The trial court concluded that the parties had previously agreed that costs incurred by both parties and "their respective offices" were to be split. The court directed the parties to file invoices with the court and serve the opposing party no later than June 16, 2023. Powers stated he had an email, and the court responded, "Is that the $63.70? That's fine. If you have anything else, you can provide that to [Widrin's counsel], and we can talk about that. I think [Widrin's counsel] needs some time to do her invoice." When Powers offered additional information, the trial court instructed Powers, "Keep that with you and attach it to your motion for your invoice."

In a declaration filed on June 16, 2023, Widrin sought a total of $28,931.07 for reimbursement for duplication of the photo and video collection. Powers apparently did not formally file a declaration or invoice, although he contends he presented his costs to the trial court at the May 30, 2023, hearing.

In an order filed on July 3, 2023, the trial court ordered Powers to reimburse Widrin $14,466 for the costs she incurred in processing the photo and video collection. This amount is, rounded, one-half of the $28,931.07 Widrin expended according to her declaration.

Powers filed a motion for reconsideration, arguing that he had never been served with the Widrin's invoice of her costs. In opposing Powers's motion, Widrin argued that she did serve Powers with her filing of costs for photo duplication, and attached a proof of service by mail. The trial court denied Powers's motion for reconsideration.

B.     *The Trial Court's Jurisdiction to Address Media Duplication Costs*

In Argument III of the opening brief, Powers argues that the trial court lacked jurisdiction to rule on the expenses of photo and video duplication "outside of the

8

boundaries of the 2015 judgment language." (Bold typeface and capitalization omitted.) Powers argues that, absent an agreement between the parties allowing for ongoing jurisdiction over duplication costs, "the court has no jurisdiction to rule on the matter." Powers reprises similar arguments throughout his briefing, contesting the jurisdiction of the trial court to rule on the various motions at issue. Powers's arguments are primarily that the matters are governed by agreement of the parties, the parties did not agree to the court retaining jurisdiction, and the time to challenge the parties' agreements has long past. We disagree with these contentions. As discussed below, the judgment effectively superseded any stipulations that were incorporated therein, the court in the judgment reserved jurisdiction, and the matters are not governed by limitations periods applicable to actions on contracts or oral agreements.

The provisions pertaining to the photo and video collection and its duplication were among the stipulations that were incorporated into, and made a part of, the judgment, and were enforceable as such. (Cf. *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1220 [" 'A merged " '. . . separation agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical' " ' "].) The judgment expressly provides that "Jurisdiction is reserved to make other orders necessary to carry out this judgment." Additionally, by statute, the trial court had the power to "compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein." (Code Civ. Proc., § 128, subd. (a)(4); see also Fam. Code, § 291, subd. (a) ["A money judgment or judgment for possession or sale of property that is made or entered under this code, including a judgment for child, family, or spousal support, is enforceable until paid in full or otherwise satisfied"].) At issue was enforcement of the judgment, not, as Powers argues, "jurisdiction over the stipulated agreements between the parties . . . ." Each party filed a request for orders

9

pertaining to photo and video duplication, and Widrin sought to recover half of her expenses in accomplishing the duplication.  Through their motions, the parties sought to enforce the judgment.  The trial court had jurisdiction to rule on the matters.

C.        *Due Process -- Notice and an Opportunity to be Heard*

Powers argues that he was deprived of due process because he did not have notice, the opportunity to review Widrin's invoice itemizing photo and video duplication costs, or the opportunity to be heard on the matter.  Powers states that he was not served with the invoice.  We conclude that the record does not establish Powers had notice and an opportunity to be heard on Widrin's compensation for photo and video duplication expenses.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ."  Similarly, article I, section 7 of the California Constitution provides that "[a] person may not be deprived of life, liberty, or property without due process of law . . . ."

"Due process requires that certain basic procedural protections be afforded before the state deprives an individual of property." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651.)  "Due process requires 'notice, an opportunity to respond, and a hearing.' [Citation.]  The purpose of due process is to provide affected persons with the right to be heard ' "at a meaningful time and in a meaningful manner." ' " (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 631.)

"Where service is made by mail strict compliance with Code of Civil Procedure section 1013a is required [citation].  That section requires that if the affidavit is not completely and correctly filled out, service is defective . . . ." (*West v. West* (1979) 92 Cal.App.3d 120, 125.)

The proof of service on which Widrin relied as proving Powers had been served with her declaration regarding "Costs Incurred for Duplication of Photograph Collection" states that Widrin's attorney served Powers by mail.  The declaration was dated and filed

on June 16, 2023.  The proof of service also was dated June 16, 2023.  However, it recites that the documents were mailed to Powers on January 23, 2023.  That was months before the trial court directed the parties to submit the documentation, on May 30, 2023.  Thus, the proof of service by mail is defective.  It recites what must be an incorrect date of service.  Widrin appears to acknowledge as much, referring in her briefing to "an obvious typo on the proof of service."

Even if substantial compliance with Code of Civil Procedure sections 1013 and 1013a, as opposed to strict compliance, would suffice (see, e.g., *Douglas v. Janis* (1974) 43 Cal.App.3d 931, 937 [although " 'strict compliance' with sections 1013 and 1013a is required, we decline to equate 'strict compliance' with absurdity in compliance"; " 'strict compliance' is satisfied by substantial, without literal, compliance"]), we conclude that an invalid or incorrect date of mailing renders the proof of service defective, as it fails to establish when a party was served with the relevant documents.  The date of service is material here.

Widrin asserts that "Powers was served by mail by Widrin's counsel on the same date as the document was filed."  However, the evidence does not prove this to be true.  Widrin also argues that her attorney, as an officer of the court, confirmed that she personally effected service, which she did during an argument before the trial court.  However, these statements were not sworn testimony and do not constitute evidence.  (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139 ["Statements and arguments by counsel are not evidence"].)  Additionally, Widrin did not file an amended proof of service in an effort to remedy the defect.

The trial court ordered Powers to pay Widrin $14,466.  In other words, the court's order would deprive Powers of property.  This implicates the due process protections of notice and an opportunity to be heard.  Proper service would have afforded Powers the opportunity to review, assess, and, if appropriate, object to Widrin's claimed expenses in the trial court.  In the absence of proof of proper service, there is no proof Powers was

apprised of Widrin's specific claims before the trial court issued its order. Thus, the evidence does not establish that he had notice and the opportunity to be heard before the court issued its ruling, violating his right to due process.

Widrin argues that Powers "was not prejudiced in any way, as [the] Court did not provide either party for a rebuttal period regarding the reimbursement claims--the matter was deemed submitted upon the filing." This was indeed the procedural course charted by the trial court. However, we cannot conclude that the trial court's timeline and procedure renders the due process violation nonprejudicial. Powers was entitled to notice and an opportunity to be heard as a matter of due process, even if the court did not intend to entertain additional briefing or hearings.

Widrin also argues that Powers waived any right to a hearing or rebuttal because, at the May 30, 2023, hearing, he did not request an opportunity to respond to Widrin's forthcoming filings. We cannot conclude that Powers forfeited his due process right to an opportunity to be heard on evidence he had yet to see because he did not anticipatorily request a hearing to address objections he might have to that evidence. Widrin does not cite to any authority for the premise that a litigant must reserve in advance the due process right to an opportunity to be heard.

In light of these determinations, we will modify the July 3, 2023, order by striking the provision that ordered Powers to pay Widrin $14,466 as reimbursement. We will remand the matter to the trial court for a new determination of the parties' respective obligations for the expense of photo and video duplication. The other challenges Powers makes to the July 3, 2023, order pertaining to the expenses of photo and video duplication, including whether the court's determination exceeded the scope of the 2015 judgment and the trial court's treatment of Powers's own request for reimbursement, may be addressed on remand.

## III

### *November 1, 2023, Order on Postjudgment Spousal Support*

A.      *Additional Background*

Powers filed a motion for an order terminating spousal support and for reimbursement of past overpayments.  Powers argued that Widrin had "acquired a very large estate, totaling more than 5 million dollars, and . . . [her] income has increased substantially."  He asserted that Widrin's estate "far exceeds the standard of living that she had during the marriage and is more than sufficient for her proper support."  Powers requested a refund of $42,000 in spousal support "overpayment" because, according to Powers, Widrin inherited her multimillion-dollar estate in February 2020, and, from that point to the date of Powers's motion, Widrin failed to disclose this inheritance.

In her written response, Widrin agreed to termination of spousal support and the permanent termination of the court's jurisdiction over spousal support, if only to "finally bring this twelve years of . . . relentless litigation to a close . . . ."  As for Powers's request for reimbursement, Widrin maintained that her income and expense declaration had been accurate.

At the September 18, 2023, hearing, Widrin stated she was willing to agree to a zero-support award and the termination of jurisdiction on spousal support effective immediately.  Powers clarified that he was requesting termination of spousal support as distinguished from a zero-support award.

In findings and orders after the hearing, the trial court accepted Widrin's concession, reduced spousal support to zero effective September 18, 2023, and permanently terminated jurisdiction over spousal support.  The court denied Powers's request for reimbursement of spousal support payments previously made, finding it was without jurisdiction to retroactively modify spousal support before the date Powers filed his motion.

B.    *Cessation of Support Obligation*

Powers argues the trial court erred in ordering spousal support to be reduced to zero.  According to Powers, Widrin agreed to terminate spousal support, which, he asserts, is different from reducing the spousal support award to zero.  We conclude Powers has failed to demonstrate reversible error.

In support of his argument that spousal support should be terminated permanently, as distinguished from setting spousal support at zero, and that this should be clearly set forth in the trial court's order, Powers fails to offer any citation to authority.  (See *County of Sacramento v. Singh*, *supra*, 65 Cal.App.5th at p. 861 [rules of appellate procedure "require an appellate brief to support each point by argument and, if possible, by citation to authority"; " 'We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory' "].)  Nor does he offer a legal distinction, with citation to authority, between setting support at zero versus terminating support.  Additionally, Powers makes no specific argument as to how he suffered prejudice as a result of this distinction between a zero support award and termination of spousal support.  "It is the appellant's burden to demonstrate the existence of *reversible* error." (*Del Real v. City of Riverside*, *supra*, 95 Cal.App.4th at p. 766, italics added; see *Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 [" 'To prevail on appeal, an appellant must establish both error and prejudice from that error' "].) Having failed to both offer legal authority in support of his argument and demonstrate prejudice, Powers has not established reversible error.

C.    *Reimbursement for Past Spousal Support Payments*

Powers claims the trial court erred in failing to grant him reimbursement for spousal support payments for the period from June 20, 2023, when he moved for termination of spousal support, until spousal support payments ceased.  Powers contends he is entitled to reimbursement for the period *after* June 20, 2023, and the written order, prepared by Widrin, fails to reflect that.  We conclude Powers is not entitled to this relief.

14

In his motion filed June 20, 2023, Powers sought a refund of $42,000 for "[s]pousal support overpayment." According to his exhibit C itemizing the purported overpayments, Powers sought to recover each month's $1,000 spousal support payment from March 1, 2020, through June 1, 2023. This amount actually totaled $40,000, not $42,000. Powers's written motion did not expressly seek reimbursement for payments after June 20, 2023.

Argument on Powers's motion took place on September 18, 2023. The trial court determined it lacked jurisdiction to modify anything prior to Powers's filing of his June 20, 2023, motion. (See generally Fam. Code, §§ 3651, subd. (c)(1), 3653, subd. (a); *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638.) Powers does not challenge this determination on appeal. At the hearing, Powers did not request reimbursement for payments made after June 20, 2023.

Thus, neither in his June 20, 2023, motion, nor at the September 18, 2023, hearing did Powers seek reimbursement for overpayment of spousal support for the period from June 20, 2023, to September 18, 2023, or for any time after June 1, 2023. Thus, in seeking reimbursement here of support payments made between June 20, 2023, and when payments ceased, Powers seeks relief that he did not seek in the trial court.

" 'It is elementary that an appellate court is confined in its review to the proceedings which took place in the trial court. [Citation.] Accordingly, when a matter was not tendered in the trial court ". . . [it] is outside the scope of review. " ' [Citation.] ' "[A] judgment will not be reversed on appeal because of the failure of the lower court to give relief not embraced in the pleadings and which it was not asked to give . . . ." ' [Citation.] 'This rule precludes a party from asserting on appeal claims to relief not asserted in the trial court.' " (*Consumer Watchdog v. Department of Managed Health Care* (2014) 225 Cal.App.4th 862, 878.) Because Powers did not seek this relief in the trial court, he may not seek it here.

## IV

*June 26, 2024, Order on Motorola 401(k) and Principal Life IRA Accounts*

A.    *Additional Background*

On July 27, 2018, Widrin filed a request for several orders, including the "amount now due on the Judgment," although nothing in the request expressly addressed the Motorola 401(k) or the Principal Life IRA.  On November 5, 2018, Powers filed a response in which he stated:  "As the Court knows, pursuant to the Judgment . . . , the Court ordered the parties to equally divide the Motorola 401(k) and the Principal Life IRA.  I proposed . . . that we agree to hire Moon, Swartz, and Madden to prepare a QDRO [Qualified Domestic Relations Order] and equally divide their engagement fee as ordered by the Court. . . .  I have written both Plan Administrators.  Principal Life has asked both parties to conduct follow up, which I intend to do.  I only ask that [Widrin] cooperate with the finalization of the orders dividing the plans."

Years later, after Powers began to represent himself, Widrin's attorney emailed Powers to meet and confer.  Widrin's attorney wrote:  "The Judgment confirms the Motorola 401k and the Princip[al] Life IRA (both in your name) as community property.  The two accounts are to [be] divided equally and you both are to share the costs.  I have previously requested that you fill out the 'self-represented' form with Moon Schwartz and Madden, but you have not.  Please advise as to your position on these two remaining issues that remain outstanding from the Judgment.  Absent satisfactory response, we will be filing a motion to compel your actions to split these two accounts."

In his responsive email, Powers stated, "With regards [*sic*] to the Equalization payment, which included all property, including retirements as stated by the Judge in his Statement of Decision.  It has been paid in full.  Any attempts to fraudulently deceive the court in this matter will be met with further litigation."

In February 2024, Widrin filed another request for orders, seeking orders requiring Powers to execute all documents required for the division of the Motorola 401(k),

requiring him to pay half of the costs to the provider, awarding Widrin the entire Principal Life IRA because Powers had withdrawn half of the account in 2016, and imposing sanctions.

In an argument before the trial court, Powers, relying on the Propertizer, argued that the Motorola 401(k) and the Principal Life IRA were included in the equalizing payment. In other words, as Powers put it, "[I]t's already paid."

In an order filed June 26, 2024, the trial court recited that the judgment confirmed that the Motorola 401(k) and the Principal Life IRA were both community property to be divided equally. The court further confirmed that the judgment resulted in an equalizing payment of $185,476 to be paid by Powers to Widrin. The court noted that there "was no specific award of the Motorola 401(k) or Principal Life IRA in the court[']s tentative decision or statement of decision." The court went on to conclude: "[T]he court finds insufficient evidence to show that the judgment . . . included the Motorola 401(k) and Principal Life IRA in the equalization payment payable to [Widrin]. Although . . . the judgment makes no specific exclusion of the Motorola 401(k) and Principal Life IRA from the equalization payment, the court finds that including these assets in the equalization payment is contrary to the intent of the court[']s statement of decision. In making this finding the court notes that neither the tentative decision nor the statement of decision divides the Motorola 401(k) or the Principal Life IRA. [¶] On the contrary, the stipulation entered into by the parties and incorporated as a judgment, expressly finds that the Motorola 401(k) and Principal Life IRA are entirely community property to be divided equally with parties to split the cost. In addition, a review of [Powers's] objection to the court[']s statement of decision filed May 27, 2015, confirms that the parties stipulated to divide the Motorola 401(k) and Principal Life IRA via QDRO [citation]. [Powers]'s objection is silent as to whether the division should be included in the equalization payment. This finding is also bolstered by the pleadings filed by [Widrin] indicating a plan between parties['] counsel to issue a QDRO shortly after the

17

judgment was issued.  [¶]  As a result the court finds that the . . . judgment does not include the Motorola 40l(k) or Principal Life IRA in the equalization payment owed from [Powers] to [Widrin].  The court finds that these two assets must therefore be divided pursuant to the judgment . . . ."

The trial court ordered Powers cooperate with execution of the division of the Motorola 401(k) and pay half of those costs, awarded the remaining half of the Principal Life IRA, in the amount of $39,150.37, to Widrin, granted Widrin's request for an award of half of the already disbursed amounts of the Principal Life IRA in the amount of $12,955.75, and granted Widrin's request for the imposition of sanctions against Powers in the amount of $5,403 based on his "continuing non-compliance with the . . . judgment."

B.      *Jurisdiction of the Trial Court*

In Argument VIII of his opening brief, Powers again argues that there is no indication the parties agreed that the trial court would retain jurisdiction to enforce the parties' property agreements.  Therefore, according to Powers, the trial court lacked jurisdiction to rule on the matter.  We disagree.

Although the parties entered into certain stipulations with reference to the retirement accounts, including that they were community property, those stipulations were incorporated into and made part of the judgment.  As such, they were enforceable as part of the judgment.  (Cf. *In re Marriage of Corona*, *supra*, 172 Cal.App.4th at p. 1220.) Widrin sought enforcement of this aspect of the judgment, as she interpreted it.  And, as previously stated, the judgment provides that "Jurisdiction is reserved to make other orders necessary to carry out this judgment."  Contrary to Powers's contention, the trial court did not lack jurisdiction over the matter.

C.      *Characterization of Widrin's Motion as One for Reconsideration*

Two of Powers's arguments are premised on his characterization of Widrin's motion as being one for reconsideration of the judgment pursuant to Code of Civil

18

Procedure section 1008. Powers asserts that Widrin's motion asked the trial court to review the 2015 judgment concerning the treatment of these retirement accounts, and, as such, it was, in fact, a motion for reconsideration.

In Argument V of his opening brief, Powers argues that the trial court erred in considering Widrin's motion because, as a motion for reconsideration, her motion was time-barred. Code of Civil Procedure section 1008 requires motions for reconsideration to be made "within 10 days after service upon the party of written notice of entry of the order . . . ." (Code Civ. Proc., § 1008, subd (a).) Because Widrin filed her motion more than eight years after the 2015 judgment, Powers argues that the trial court exceeded its discretion in considering this motion.

We disagree with Powers's characterization of Widrin's motion. Widrin did not seek reconsideration of the 2015 judgment, as Powers argues. She instead sought orders requiring Powers to execute all documents necessary to divide the Motorola 401(k) and Principal Life IRA accounts by a qualified domestic relations order, and for Powers to pay half of the costs, "per the Judgment." Widrin's position is that the judgment provided for the division of these community property accounts, and that Powers has thus far failed to comply with the judgment. Whether her interpretation of the judgment's treatment of these accounts is right or wrong, she is seeking to *enforce* the judgment, not its reconsideration. Powers's contention that the trial court erred in considering Widrin's motion because it was a time-barred motion for reconsideration is without merit.

In Argument VI of the appellant's opening brief, Powers argues that the trial court exceeded its discretion under Code of Civil Procedure section 1008 by reinterpreting the 2015 judgment. Because we reject Powers's argument that Widrin's motion was one for reconsideration, this argument, too, is without merit.

D.     *The Existence of a Binding Agreement Between the Parties*

In Argument VII of appellant's opening brief, Powers argues that the trial court "failed statutorily to determine if a valid and binding agreement between [Powers] and

19

[Widrin] existed to divide [Powers's] retirement accounts via QDRO or DRO [Domestic Relations Order]." (Some capitalization omitted.) In elaborating on the point, Powers asserts that the trial court erred in concluding, "through its own research and not by any evidence or argument presented by the parties," that the parties had stipulated to divide the Motorola 401(k) and Principal Life IRA accounts by means of a qualified domestic relations order. According to Powers, this violated due process because the court did not "bring its argument or evidence in front of the parties until it[s] decision . . . ." He also argues that there is no evidence that the division of the retirement accounts was not accounted for in Powers's equalizing payment.

For purposes of this argument, the trial court's conclusions were that, under the 2015 judgment, the Motorola 401(k) and Principal Life IRA accounts were "entirely community property." However, the court found that "judgment does not include the Motorola 40l(k) or Principal Life IRA in the equalization payment owed from [Powers] to [Widrin]. The court finds that these two assets must therefore be divided pursuant to the judgment . . . ."

Contrary to Powers's contention, the trial court did not " fail[] statutorily to determine if a valid and binding agreement between [Powers] and [Widrin] existed to divide [Powers's] retirement accounts via QDRO or DRO." (Some capitalization omitted.) Instead, the court found that (1) under the judgment, these retirement accounts were community property, and (2) they were not included in the equalizing payment Powers paid to Widrin. As previously addressed, the trial court enforced the judgment which it had reserved jurisdiction to do; it did not fail to determine the existence of a binding agreement between the parties.

Nor did the trial court improperly conduct its own research by referring to Powers's objection to the statement of decision. "Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case and other cases." (*Cantu v. Resolution Trust*

20

*Corp.* (1992) 4 Cal.App.4th 857, 877, italics omitted.) In any event, the court did not rely on this to determine that these accounts were not in the equalizing payment and were to be divided by a qualified domestic relations order. The court referred to Powers's objection only as "confirm[ing]" that the parties had previously agreed to divide these accounts by a qualified domestic relations order.

E.     *Statute of Limitations and Laches*

Powers argues Widrin was barred from challenging any property agreement based on the statute of limitations. Powers asserts that Widrin sought to relitigate agreements and orders years after the fact. Contrary to Powers's contention, Widrin here was not seeking to address the breach of an agreement between the parties. We reiterate that Widrin sought to enforce the provisions of the 2015 judgment. Widrin's claims therefore were not governed (or barred) by the statute of limitations applicable to an action on a contract (Code Civ. Proc., § 337) or oral agreement (Code Civ. Proc., § 339).

Powers also argues the doctrine of laches barred Widrin "from contesting any enforceability of an agreement related to the retirement property division due to her long delay in raising a challenge, which now creates a prejudice to [Powers] who, for over six years, relied on the finality of the judgment." Once again, Widrin does not seek to contest the enforceability of any agreement between the parties. Moreover, in the portion of Powers's argument addressed to laches, he cites to no authority to support his position, and thus we may disregard it. (See *County of Sacramento v. Singh*, *supra*, 65 Cal.App.5th at p. 861.)

F.     *Res Judicata, Collateral Estoppel, Hearsay, and Settlement Negotiations*

Powers argues that, in considering Widrin's motion, the trial court erred in ignoring his contentions concerning hearsay, collateral estoppel, and res judicata, violating his right to due process. This section of Powers's briefing addressing res judicata, collateral estoppel, hearsay, as well as the use of evidence from settlement

21

negotiations contains no citation to legal authority.  Accordingly, we may disregard these arguments.  (See *County of Sacramento v. Singh*, *supra*, 65 Cal.App.5th at p. 861.)

G.     *Family Code Section 2550 and the Division of the Retirement Accounts*

Powers argues that the trial court erred in dividing his Motorola 401(k) and Principal Life IRA retirement accounts in contravention of the equality requirement of Family Code section 2550.  He argues that these accounts were community property assets accounted for in the equalizing payment.  According to Powers, the trial court's determination amounts to improperly requiring him to divide the value of his retirement accounts a second time in violation of Family Code section 2550.  This argument, and the next one in which Powers argues that the trial court ignored relevant evidence, invokes Powers's primary substantive contention concerning the June 26, 2024, order:  that these retirement accounts were already divided by means of the equalizing payment.  We conclude Powers has not established reversible error.

"Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally."  (Fam. Code, § 2550.)  Thus, generally, "community property is divided equally in the aggregate when the marriage ends."  (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1102.)

The judgment expressly provides that the Motorola 401(k) and the Principal Life IRA accounts, both of which were in Powers's name, were "entirely community in character and shall be divided equally between the parties, with the parties to equally share any cost . . . ."

Widrin misrepresents or misunderstands Powers's position, characterizing his argument as being that he was awarded the entirety of these two accounts.  Powers agrees

22

that, under the judgment, these accounts were community property to which each party was entitled to an equal half. Powers's contention instead is that both accounts *were divided and accounted for in the equalizing payment*.

Powers argues that, with the exception of certain NetSuite stock, all community property, including these retirement accounts, was considered in the amount of the equalizing payment. He relies on the following language from the 2015 judgment: "The Court orders that total payment to [Widrin], *including equalizing payment for community assets*, reimbursement for educational costs and interest to May 4, 2015, arrears on support and interest thereon to May 4, 2015, sanctions, and attorney fee awards, but excluding the 1430 shares of NetSuite stock from the E*Trade account, is $185,476.00, due and payable upon entry of Judgment." (Italics added.) However, this language alone does not establish that the $185,476 equalizing payment addressed *all* community property assets save the NetSuite stock or that the subject retirement accounts were factored into the equalizing payment. One reading of this provision could be that the equalizing payment addressed all community property. Other readings are that the equalizing payment addressed *some* community property, addressed exclusively community assets, or addressed community property identified elsewhere.

Additionally, even if we do not conclude, as Widrin argues, that judicial estoppel prevents Powers from raising his argument that the retirement accounts were addressed in the equalizing payment, we do note that, several years after the calculation of the equalizing payment in the judgment, Powers did contemplate the division of the retirement accounts by a qualified domestic relations order. On November 5, 2018, Powers filed a response to Widrin's request for orders in which he stated in a declaration: "As the Court knows, pursuant to the Judgment . . . , the Court ordered the parties to equally divide the Motorola 401(k) and the Principal Life IRA. I proposed . . . that we agree to hire Moon, Swartz, and Madden to prepare a QDRO and equally divide their engagement fee as ordered by the Court. . . . I have written both Plan Administrators.

Principal Life has asked both parties to conduct follow up, which I intend to do. I only ask that [Widrin] cooperate with the finalization of the orders dividing the plans." At the time of the November 5, 2018, filings, Powers was represented by counsel.

Even more tellingly, in another declaration filed with that response, one of Powers's attorneys, discussing numerous issues and errors related to the Propertizer, noted that the Motorola 401(k) and the Principal Life IRA were community property to be divided equally; stated that she had communicated with the two plans' administrators with regard to the proposed division by a qualified domestic relations order prepared for the parties by Moon, Schwartz, and Madden; and it is significant to note, stated that Widrin had included these two retirement accounts "in the Propertizer unnecessarily. *As the equal division has no impact on the equalization payment*, I included it in my Propertizer for uniformity." (Italics added.)

It appears that it was only *after* he began to represent himself that Powers took the position that these accounts were divided in the equalizing payment.

We further note that the judgment contemplated that the parties would "equally share any cost" in the division of these accounts. It is unclear what costs would be involved if these accounts were simply included in the equalizing payment.

In any event, a " 'judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.) We conclude the language of the judgment on which Powers relies is insufficient to satisfy his burden of demonstrating that the trial court erred in determining that the retirement accounts were not accounted for in the equalizing payment. (See generally *Del Real v. City of Riverside*, *supra*, 95 Cal.App.4th at p. 766 [appellant's burden to demonstrate reversible error].)

H.	*Ignoring Relevant Evidence that the Accounts Were in the Equalizing Payment*

According to Powers, the trial court erred, and violated his due process rights, by ignoring relevant evidence establishing that the retirement accounts were divided in the equalizing payment. The evidence to which Powers refers includes the statement of decision, the tentative decision, and the Propertizer. Again, Powers has not met his burden of demonstrating reversible error.

Powers argues that the statement of decision "clearly addresses the disposition of [Powers's] retirement accounts, consistent with the Judgment, by including the retirement accounts explicitly in the calculation of the equalization payment." The statement of decision was incorporated into the judgment. On the page of the statement of decision cited by Powers, the trial court stated that it "hereby attaches the revised Propertizer to this Statement of Decision, and finds that the total equalizing payment due from Petitioner to Respondent is the sum of $185,476.80." This does not establish, on its face, that the retirement accounts were "explicitly" included in the equalizing payment. We will address the Propertizer below.

Powers also argues the tentative decision, which was incorporated into the statement of decision, "is clear in its language regarding what it included in its equalization payment calculation and includes an explicit reference to the retirement accounts." The tentative decision stated that "the parties were able to reach some agreements regarding division of retirement benefits, amounts in various accounts as of date of separation, vehicle allocation, and other distributions as reflected in the Propertizer prepared by Attorney for [Widrin] and submitted to the Court on June 27, 2014 in line items 3, 4, 5, 6, 7, 8, 12, 13, 14, 15, 17, 18, 19 and 20." This passage also does not establish that the division of these accounts was accounted for in the equalizing payment.

25

The Propertizer has rows for individual property items and columns for, among other things, Powers's property equity, Widrin's property equity, and the community's property equity. The Motorola 401(k) and the Principal Life IRA are listed as community property in essentially equal values under both parties' columns. For the Motorola 401(k), the Propertizer assigns $20,123 to Powers and $20,122 to Widrin. For the Principal Life IRA, the Propertizer assigns $24,194 to Powers and $24,193 to Widrin. In the last row is the equalizing payment in the amount of $185,476.

Powers argues that "[s]imple math demonstrates that the retirement accounts were included in the equalization payment amount . . . ." However, he does not elaborate or illustrate. Problematically, the Propertizer's columns do not add up to the equity totals at the bottom of the page. Powers's total equity value at the bottom of the page, $387,036, is substantially more than the sum of the property values in his column, $361,494. Widrin's total equity value, $16,083, is substantially less than the sum of her column, $43,548. The joint equity total, $403,119, is less than the sum of that column, $405,042. The totals at the bottom are the figures used to arrive at the equalizing payment. Because it is not clear what property values are and are not included in those totals, it cannot be determined from the Propertizer what property items are and are not included in the equalizing payment. We also note that the total number of property items recited as appearing on the Propertizer is incorrect. These issues were actually raised by Powers's prior attorney in the trial court.

As stated, it cannot be determined what properties and amounts on the Propertizer are included in the totals from which the equalizing payment is derived. Thus, whether the retirement accounts are included in the calculation of the equalizing payment cannot be determined from the Propertizer. Additionally, with reference to the tentative decision, which referred to line item numbers, we note that the two retirement accounts do not have corresponding line item numbers like some other property items do. The Propertizer does

26

not establish that the Motorola 401(k) and the Principal Life IRA accounts were included in the equalizing payment.

Powers has not satisfied his burden of demonstrating reversible error based on the Propertizer, the tentative decision, or the statement of decision.  (See generally *Del Real v. City of Riverside*, *supra*, 95 Cal.App.4th at p. 766.)  Nor has he established that the trial court erred by ignoring evidence.

I.       *Resolving Ambiguity in a Document Against the Drafter*

Powers argues that the trial court improperly found ambiguity in the judgment, which Widrin's attorney drafted, and then interpreted it in favor of Widrin.  According to Powers, pursuant to Civil Code section 1654, any ambiguity should be resolved in his favor.  Powers did not raise this argument in the trial court.  "Generally, issues not raised in the trial court cannot be raised for the first time on appeal."  (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44.)  In any event, even assuming it applied here, courts apply the maxim that ambiguities are construed against the party who drafted the instrument only when they cannot resolve the uncertainty with other rules of construction and the consideration of extrinsic evidence.  (*Vine v. Bear Valley Ski Co.* (2004) 118 Cal.App.4th 577, 590, fn. 2; see *Kim v. TWA Construction, Inc.* (2022) 78 Cal.App.5th 808, 836 [Civ. Code, § 1654 "applies only if ambiguity remains after recourse to other rules of construction"; it " 'does not stand for the proposition that, in every case where one of the parties to a contract points out a possible ambiguity, the interpretation favored by the nondrafting party will prevail' "].)  Powers has not established that failure to resort to Civil Code section 1654 constituted reversible error.

J.       *Sanctions*

Powers argues that the trial court erred in imposing $5,403 in sanctions against him.  We disagree.

An appellate court reviews an award of sanctions pursuant to Family Code section 271 for abuse of discretion.  (*In re Marriage of Pearson* (2018) 21 Cal.App.5th

218, 233.) Powers's argument is premised on his position that he "has been compliant with the 2015 Judgment that divided [Powers's] retirement account via an equalization payment. The lower court provides no evidence of any order that required [Powers] to divide his retirement accounts both by equalization payment (which [Powers] paid), and by QDRO and DRO." Powers's argument essentially relitigates the question of whether the retirement accounts were divided by means of the equalizing payment. We have concluded that Powers failed to demonstrate that the retirement accounts were divided in the equalizing payment.

Powers also argues that, insofar as the trial court concluded the division of the retirement accounts resulted from an agreement between the parties, the court lacked jurisdiction to impose sanctions. However, as stated repeatedly, the trial court's determination did not concern an agreement between the parties, but rather enforcement of the 2015 judgment. Powers has failed to establish an abuse of discretion.

K.      *Principal Life IRA*

With regard to the Principal Life IRA, the trial court "grant[ed] [Widrin's] request to award 1/2 of the already disbursed amounts in the Principal Life IRA in the amount of $12,955.75." Powers notes that he used the proceeds of the withdrawal to pay the equalizing payment. He argues that the trial court erred in making this award, and the court's order violated due process. According to Powers, the court did not offer any rationale or authority for making this award.

The trial court plainly issued this award because the Principal Life IRA was community property, the court determined Powers had not paid Widrin her share of that community property, and therefore, she was entitled to half of the funds Powers withdrew. The reason for the award is self-evident.

Powers also argues that any claim to entitlement to these funds is time-barred. However, his contention is premised on the interpretation of the matter as a breach of contract issue. Again, Widrin is seeking to enforce the judgment.

28

DISPOSITION

The order dated July 3, 2023, is modified by striking that portion of the order granting Widrin's request for reimbursement in the amount of $14,466, and ordering Powers to pay that amount on or before October 1, 2023.  The matter is remanded for a new determination on the parties' obligations for the costs of duplication of the community's photo and video collection.  The order dated November 1, 2023, is affirmed. The order dated June 26, 2024, is affirmed.  The parties shall pay their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)


_____\\s\\_____
Krause, J.


We concur:


_____\\s\\_____
Earl, P. J.


_____\\s\\_____
Mesiwala, J.